## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

MICHAEL TISIUS,          )
                          )
        Petitioner,     )
                          )
        v.              )     Case No. 4:17-cv-00426-SRB
                          )
RICHARD JENNINGS, WARDEN,[1]  )
                          )
        Respondent.   )

## ORDER

Before the Court is Petitioner Michael Tisius's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in a Capital Case. Doc. 38. For the reasons explained below, Petitioner's Petition is DENIED.

### I.      Factual Background

Petitioner was convicted of two counts of first-degree murder pursuant to Mo. Rev. Stat. § 565.020 (2000), in the Circuit Court of Boone County, Missouri and was sentenced to death on both counts. The facts as summarized by the Missouri Supreme Court are:

> In early June of 2000, [Petitioner] and Roy Vance were cellmates at the Randolph County Jail in Huntsville, Missouri. [Petitioner's] sentence lasted thirty days, and Vance told [Petitioner] he would be in jail some fifty years. As such, [Petitioner] and Vance discussed various schemes where [Petitioner] would return to jail to help Vance escape. In one of those plans, [Petitioner] was to return to the jail with a firearm, force the guards into a cell, and give the gun to Vance, who would then take charge and release all of the inmates.
>
> The Randolph County Jail was a two-story brick building that had been converted from a house. The front door of the jail was kept locked, and the officers could remotely open the door when visitors rang a doorbell. Inside the front door was a small foyer, and to the right behind a counter was the dispatch area where the officers were stationed. A hall led from the dispatch area to the jail cells in the rear of the building.

---

[1] Since the petition was filed, Richard Jennings replaced Cindy Griffith as Warden of Potosi Correctional Center. Accordingly, Jennings is substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and 28 U.S.C. § 2254, Rule 2.

[Petitioner] was released on June 13, 2000. Shortly after his release, [Petitioner] contacted Vance's girlfriend, Tracie Bulington, who said that she wanted to go through with the escape plan. Four days later, Bulington drove from Macon to Columbia with a woman named Heather Douglas to pick up [Petitioner] and drive him back to Macon; [Petitioner] and Bulington stayed at Douglas' home for four or five days. During the ride to Columbia, Douglas heard the two discuss various ways of breaking Vance out of jail, including the idea of locking the jailers in a cell. They told Douglas they were joking. Douglas testified that over the days to follow, she heard [Petitioner] and Bulington say that they were "on a mission," but they would not elaborate. [Petitioner] and Bulington also described taking cigarettes to Vance at the jail and of having gotten information from a "stupid deputy." At other times they would stop talking when Douglas entered the room. Douglas also testified that [Petitioner] and Bulington kept a stereo, clothing and camping gear in Bulington's car and that she also saw a pistol in Bulington's car.

Beginning June 17, 2000, and continuing over several days, [Petitioner] and Bulington visited the jail several times. At or around 1:30 a.m. or 2 a.m. one of those mornings, they were admitted in the front door and delivered a pack of cigarettes to an on-duty officer, requesting that it be given to Vance. A day or two later, [Petitioner] and Bulington returned to the jail with a pair of socks for Vance and asked questions about his upcoming court date.

Bulington testified that each delivery signified to Vance certain facts, such as that [Petitioner] had made it to town or that the jail break would not occur the night of the delivery. During some of those visits, [Petitioner] kept a .22 caliber pistol that Bulington had taken from her parents' home in the front of his pants. [Petitioner] had tried to acquire a bigger gun than the one Bulington took. On the night of one of their visits, one officer testified that the [Petitioner] and Bulington were acting "real funny," nervous and erratic, such that he wrote a police report about the visit.

[Petitioner] tested the gun by firing it outside of Bulington's car window while the two were driving on country roads on June 21, 2000. Later that evening, [Petitioner] and Bulington drove around listening to a song [by the group Bone Thugs-n-Harmony] as they prepared to get Vance out of jail.[2] [Petitioner] rewound the cassette and played the [] song over and over. [Petitioner] told Bulington "it was getting about time" and that "he was going to go in and just start shooting and that he had to do what he had to do." [Petitioner] also said he would go "in with a blaze of glory."

---

[2] In the first post-conviction proceeding, the Boone County Circuit Court determined the song Petitioner listened to was by the group Bone Thugs-N-Harmony, but it was not the exact song played to the jury in the first penalty-phase proceeding. *Tisius v. State,* Cause No. 03CV165704, p. 31 Doc. 46-13, p. 90). The sentence was overturned on that basis, and a new penalty-phase proceeding was ordered. Doc. 46-13, p. 97).

At 12:15 a.m. on June 22, [Petitioner] and Bulington returned to the Randolph County Jail, rang the doorbell and were admitted. [Petitioner] again carried the pistol in his pants. [Petitioner] and Bulington told the officers they were delivering cigarettes to Vance. The two officers present were Leon Egley and Jason Acton. [Petitioner] made small talk with one of the officers for about ten minutes, discussing what [Petitioner] was planning to do with his life and how [Petitioner] was doing. Bulington testified she was ready to leave but froze as she noticed [Petitioner] had the gun drawn beside his leg. [Petitioner] then raised his arm with the pistol drawn and, from a distance of two to four feet, shot Acton in the forehead above his left eye, killing him instantly. Egley began to approach [Petitioner] and about ten seconds after he killed Acton, [Petitioner] shot Egley one or more times from a distance of four or five feet, until Egley fell to the ground. Both officers were unarmed.

[Petitioner] then took some keys from the dispatch area and went to Vance's cell. [Petitioner] could not open the cell, so he returned to the dispatch area to search for more keys. While [Petitioner] was in the dispatch area, Egley grabbed Bulington's legs from where he was lying on the floor, and [Petitioner] shot him several more times at a distance of two or three feet. Egley suffered five gunshot wounds, three to the forehead, a graze wound to the right cheek and a wound to the upper right shoulder. Not long afterwards, police found Egley gasping for air and heard a gurgling sound; he was surrounded by a pool of blood. Egley died shortly afterwards.

[Petitioner] and Bulington fled in her automobile. [Petitioner] threw the keys from the dispatch area out of the car window on the way out of town. Bulington threw the pistol from the car window while crossing a bridge on Highway 36. After the two had passed through St. Joseph and crossed the Kansas state line, Bulington's car broke down. Later that day, the two were apprehended by the police, and the keys and gun were recovered. After having waived his *Miranda* rights, [Petitioner] gave oral and written confessions to the murders.

[Petitioner's] theory at trial was that he was guilty at most of second-degree murder because although he admits that he shot and killed the two officers, he argues that he did so without deliberation.

*State v. Tisius*, 92 S.W.3d 751, 757-59 (Mo. banc 2002).

## II.     Procedural Background

On December 10, 2002, Petitioner's first-degree murder convictions and death sentences were affirmed on direct appeal by the Missouri Supreme Court. *Id.* Certiorari was denied on June 9, 2003. *Tisius v. Missouri*, 539 U.S. 920 (2003). The Circuit Court of Boone County denied Petitioner's Rule 29.15 motion for post-conviction relief with respect to Petitioner's guilt phase

3

claims and affirmed the two, first-degree murder convictions. *Tisius v. State*, Cause No. 03CV165704, pp. 3-4; Doc. 46-13, pp. 62-63. The Circuit Court, however, remanded the case for a new penalty phase. *Id.* Petitioner appealed the Circuit Court's affirmance of the two, first-degree murder convictions, and the Missouri Supreme Court affirmed. *Tisius v. State*, 183 S.W.3d 207, 218 (Mo. banc 2006).

At resentencing Petitioner was again sentenced to death. During the second, penalty-phase proceeding, the state relied on evidence of events that occurred after the original, penalty-phase proceeding to argue future dangerousness. The Missouri Supreme Court affirmed Petitioner's death sentences on direct appeal. *State v. Tisius*, 362 S.W.3d 398 (Mo. banc 2012). The Circuit Court denied Petitioner's Rule 29.15 motion for post-conviction relief, and the Missouri Supreme Court affirmed. *Tisius v. State*, 519 S.W.3d 413 (Mo. banc 2017). The Missouri Supreme Court summarized the jury's findings at the second, penalty-phase proceeding:

> At the close of evidence, the state submitted three statutory aggravating circumstances with respect to each murder count: (1) that the murder was committed while [Petitioner] was engaged in the commission of another unlawful homicide; (2) that the murder involved depravity of the mind; and (3) that the murder was committed against a peace officer engaged in official duties. Trial counsel objected on double jeopardy grounds to the third aggravating circumstance being submitted with respect to the murder of Mr. Acton because the jury from the original penalty phase did not find that circumstance. Trial counsel's objection was overruled. The jury found all three aggravating circumstances with respect to the murder of Mr. Egley and only the first and the third aggravating circumstances with respect to the murder of Mr. Acton. The jury found no mitigating circumstances and recommended [Petitioner] be sentenced to death on each count. The trial court sentenced [Petitioner] in accordance with the jury's recommendation.

519 S.W.3d at 419-20.

### III.    Legal Standard

### A.    Antiterrorism and Effective Death Penalty Act

"The Antiterrorism and Effective Death Penalty Act of 1996 [("AEDPA")] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-404 (2000)). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562

4

U.S. 86, 102-03 (2011) (internal quotation and citation omitted). Pursuant to 28 U.S.C. § 2254(d), a writ of habeas corpus shall only be issued in favor of a person in custody pursuant to a state court judgment with respect to any claim adjudicated on the merits in state court, if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA review applies to the last reasoned decision of the state courts. *Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011).

The "contrary to" and "unreasonable application" phrases in § 2254(d)(1) have independent meaning. "Under § 2254(d)(1), a state court decision is 'contrary to' clearly established federal law when the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law;' or (2) 'decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *White v. Dingle*, 757 F.3d 750, 754 (8th Cir. 2014) (quoting *Williams*, 529 U.S. at 405). "A decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A]n unreasonable application is different than an incorrect one." *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003) (citing *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 403-404). A court "may not grant a writ of habeas corpus unless the relevant state court decision is *both* wrong *and* unreasonable." *Id.* at 587 (emphasis in original).

Pursuant to § 2254(e)(1), "In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." A § 2254 petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1). *Brumfield v. Cain*, 576 U.S. 305, __, 134 S.Ct. 10, 15 (2015). The Supreme Court has stated, however, that in the context of § 2254(d)(2), the term "unreasonable" is difficult to define." *Wood v. Allen*, 588 U.S. 290, 301 (2010). The Supreme Court has held "that a state-court factual determination is not unreasonable merely because the federal habeas court would

5

have reached a different conclusion in the first instance." *Id.* Even if reasonable minds might disagree as to the factual finding in question, that will not suffice for habeas relief under § 2254(d)(2). *Id.* at 302.

## IV.   INDEX OF ANALYSIS

A.   Ineffective Assistance of Counsel – Page 9

1. Ground 1 - [Petitioner] was denied his constitutional right to conflict-free and effective counsel when trial counsel at his resentencing trial were paid a flat fee of $10,000 apiece. [Petitioner] was denied his constitutional right to conflict-free and effective counsel when trial counsel at his resentencing trial were paid a flat fee of $10,000 apiece.

2. Ground 2 - Trial counsel's failure to call lay mitigation witnesses violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.

3. Ground 4 - Resentencing counsel's failure to submit all relevant portions of Dr. Peterson's prior testimony and omission of testimony supporting two additional mental-state statutory mitigating circumstances not otherwise presented to the jury— that [Petitioner] acted under the influence of extreme mental or emotional disturbance and that [Petitioner's] capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired—violated [Petitioner's] rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment at his resentencing.

4. Ground 6 - [Resentencing] counsel were ineffective for failing to investigate, prepare, and rebut known aggravation being presented by the State in violation of [Petitioner's] rights as guaranteed by the First, Sixth, and Fourteenth Amendments.

5. Ground 13 - Resentencing counsel were ineffective for failing to move to prohibit the death penalty because [Petitioner's] mental age was less than 18.

6. Ground 17 - Trial counsel were ineffective for not investigating and calling a handwriting expert to testify that Roy Vance had written a letter addressed to "Karl" to support an asserted defense in violation of the Sixth and Fourteenth Amendments.

7. Ground 20 - Counsel's failure to object properly to the state's knowing presentation of false and misleading guilt-phase argument suggesting that [Petitioner] obtained the gun by stealth and therefore deliberated violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.

8. Ground 22 - [Petitioner] was denied effective assistance of counsel in his first trial when trial counsel failed to [] question prospective jurors about the distinction between first-and second-degree murder and failed to object to the verdict directors for first- and second-degree murder.

9. Ground 23 - [Petitioner] was denied his constitutional right to the effective assistance of counsel, due process of law, and to be free from cruel and unusual punishment when trial counsel failed to object to improper prosecutorial closing arguments during [Petitioner's] first trial.

6

10. Ground 24 - [Petitioner] was denied effective assistance of counsel when trial counsel failed to object to the assistant attorney general's statement that Mr. Fusselman, the elected prosecutor, had requested his assistance because "Randolph County has not had the misfortune of having that many murders so it is not something with which he comes into contact with [sic] regularly."

11. Ground 26 - Appellate counsel was constitutionally ineffective for not challenging on appeal the admission and display on a movie-screen of autopsy photos of the deceased men thereby denying [Petitioner] due process, a fundamentally fair trial, and effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments.

12. Ground 27 - Trial counsel were ineffective for failing to object at the instruction conference to Instruction No. 4, the reasonable doubt instruction, in violation of the Sixth and Fourteenth Amendments provided to the jury at the first trial.

13. Ground 28 – Trial counsel were ineffective for not objecting to references to and the admission of [Petitioner]'s t-shirt, which depicted and bore the legend "Guardians of Paradise," because this denied [Petitioner]'s due process, freedom of speech and association, a fundamentally fair trial, and effective assistance of counsel, guaranteed by the First, Sixth, and Fourteenth Amendments.

B. Procedural Default – Page 38

1. Ground 3 - [Petitioner] was deprived of his right to the effective assistance of counsel under the Sixth, Eighth, and Fourteenth Amendments when counsel failed to adequately and properly investigate, develop, and present significant expert mitigating evidence.

2. Ground 5 - [Petitioner] was denied his constitutional right to effective assistance of counsel when [resentencing][3] counsel failed to prepare their expert witness, Dr. Shirley Taylor, by informing her of evidence that would be offered at trial concerning statements and conduct of [Petitioner] while he was in jail before his resentencing hearing.

3. Ground 8 - [Petitioner] was denied effective assistance of counsel when [resentencing] counsel failed to present evidence that [Petitioner] was under the substantial domination of Roy Vance when the offense was planned and committed.

4. Ground 9 - The [resentencing] court erred in allowing the improper cross-examination of the defense expert, psychologist Dr. Shirley Taylor, over objection in violation of [Petitioner's] rights to due process, trial by a fair and impartial jury, and freedom from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5. Ground 10 - [Resentencing] counsel's failure to object to the prosecution's closing arguments urging that (1) the jury had an obligation to sentence [Petitioner] to death to protect the law enforcement community from [Petitioner]; (2) death was appropriate because that was what the victims' families desired; and (3) [Petitioner] did not have

---

[3] Petitioner's Petition refers to "trial counsel," but the argument section makes clear that Petitioner is referring to resentencing counsel. Doc. 38, p. 84.

the right to ask for mercy violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.

6. Ground 11 - [Petitioner] was denied his constitutional rights to due process of law and to be free from cruel and unusual punishment due to improper jury instructions at the resentencing hearing.

7. Ground 12 - Petitioner was denied effective assistance of counsel when [resentencing] counsel failed to offer modified jury instructions that properly set forth the federal constitutional requirements for a death sentence.

8. Ground 16 - First trial counsel's failure to adequately investigate and present a diminished capacity or involuntary intoxication defense violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.

9. Ground 18 - [Petitioner] was denied his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution to present a defense when the trial court sustained an objection excluding a letter from the co-defendant Vance soliciting assistance in breaking Vance out of jail at [Petitioner]'s first trial.

10. Ground 25 - Counsel's failure to prevent the jury from seeing inflammatory evidence of brain matter of the victims on the floor of the scene of the crime – which the jury otherwise would not have seen and considered – violated [Petitioner]'s constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.

11. Ground 31 - [Petitioner] was denied his right to effective assistance of counsel by trial counsel's failure to adequately question prospective jurors pertaining to the death penalty.

C. Fails to State a Claim for Habeas Relief – Page 62

1. Ground 7 - [Resentencing] counsel were ineffective for failing to investigate and rebut [Petitioner's] boot shank conviction used by the state as aggravating evidence at his resentencing in violation of [Petitioner's] rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments.

2. Ground 14 - [Petitioner] was denied his constitutional rights to due process of law and confrontation of witnesses when documents concerning his prison contraband conviction were admitted into evidence at his resentencing.

3. Ground 15 - [Petitioner] was denied his constitutional right to effective assistance of counsel when [resentencing] counsel failed to investigate and present evidence concerning [Petitioner's] conviction for possession of a prohibited object in prison at his resentencing.

4. Ground 19 - [Petitioner] was denied due process of law when the trial court at his first trial permitted cameras in the courtroom.

5. Ground 21 - [Petitioner] was denied due process of law because he was convicted upon legally insufficient evidence of deliberation, an element of first-degree murder under Missouri law.

6. Ground 29 - The state suppressed favorable exculpatory evidence in violation of [Petitioner]'s right to due process of law.

8

7. Ground 30 - [Petitioner] was denied proper proportionality review as required by Missouri law in violation of his constitutional right to due process of law under the Fourteenth Amendment.

## V. Analysis

Petitioner raises thirty-one grounds for relief. Petitioner argues each ground presented "is sufficiently prejudicial to require reversal," and asks the Court to consider the "cumulative effect" of the grounds raised. Doc. 38, p. 29. To the extent Petitioner is asserting a cumulative effect theory, this argument contradicts Eighth Circuit precedent.[4] The Court will address each ground separately.[5]

### A. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim has two components: (1) that "counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

[4] The Eighth Circuit held:

> We repeatedly have recognized "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers,* 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted); *see, e.g., United States v. Robinson,* 301 F.3d 923, 925 n. 3 (8th Cir. 2002) (recognizing "the numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief," and noting the Eighth Circuit's rejection of cumulative error doctrine); *Wainwright v. Lockhart,* 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation." (citation omitted)); *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir. 1990) (holding "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own" (citation omitted)).

*Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

[5] For clarity, the Court adopts Petitioner's headings as stated in his Petition with respect to each ground raised. Such adoption is not meant to impact or imply the Court's ruling on any given ground.

9

perspective at the time. *Id.* A court must presume that a challenged action was sound trial strategy, and the defendant is required to overcome such presumption. *Id.*

With respect to the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a death sentence . . ., the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695. A defendant must establish both prongs of the *Stickland* test by a preponderance of the evidence to prove ineffective assistance of counsel. *Tisius v. State*, 519 S.W.3d at 420 (citation omitted).

      **1.   Ground 1 – [Petitioner] was denied his constitutional right to conflict-free and effective counsel when trial counsel at his resentencing trial were paid a flat fee of $10,000 apiece.**

Petitioner's counsel at the second penalty-phase proceeding, Scott McBride and Christopher Slusher, were each paid a $10,000 flat fee to handle the capital resentencing. Petitioner now argues this inadequate fee structure created a conflict of interest that adversely affected his lawyers' performance. Petitioner further argues that the state court's denial of this claim was contrary to, or involved an unreasonable application of clearly established Supreme Court law and was based on an unreasonable determination of the evidence presented. As a result, Petitioner argues he is entitled to a new resentencing proceeding.

The Missouri State Public Defender contracted with Mr. Slusher and Mr. McBride to represent Petitioner and agreed to pay them each a $10,000 flat fee. The Public Defender also agreed to cover additional expenses. While counsel's request to hire an outside mitigation specialist was denied, the Public Defender assigned an in-house mitigation specialist, Tami Miller, to work on the case. Mr. Slusher testified that the flat fee affected his ability to use an investigator in his office on the case, but he also testified that he could have requested investigative assistance from the Public Defender's office. The Boone County Circuit Court made the following fact finding, "Both Mr. Slusher and Mr. McBride indicated that the fee structure did not have any impact on their representation of [Petitioner]." Doc. 46-29, p. 25.

In the last reasoned decision on the issue, the Missouri Supreme Court affirmed the Boone County Circuit Court and held:

> The motion court found trial counsel's testimony credible that the flat fee arrangement had no adverse impact on their representation of Mr. Tisius. The record supports the motion court's finding. Mr. McBride testified there was nothing he did differently for the case because he was being paid a flat fee instead of charging an hourly rate. While Mr. Slusher testified the flat fee prevented the investigator from Mr. Slusher's firm from doing much work on the case, he further testified that, to the extent they needed an investigator, it was something they could bill the public defender's office for or that the public defender's office would provide. Additional testimony establishes that, when trial counsel requested a mitigation specialist, the public defender's office provided one for Mr. Tisius' case. The motion court, therefore, did not clearly err in finding that no conflict of interest resulted from trial counsel's flat fee agreement.

*Tisius*, 519 S.W.3d at 430.

When an alleged conflict of interest involves multiple, concurrent representations, the Supreme Court has stated, "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 466 U.S. 335, 348 (1980). Prejudice is not a required showing in such a circumstance. *Id.* at 349. In *Mickens v. Taylor*, the Supreme Court considered a conflict-of-interest claim based on successive representation. 535 U.S. 162, 164 (2002). The Supreme Court held that in such a case, even when the trial court failed to inquire into the potential conflict of interest, the petitioner was not excused from the *Sullivan* requirement to show adverse effect on the lawyer's performance. *Id*. at 173-74. The *Mickens* Court was careful to apply a narrow reading of *Sullivan* and cautioned that no Supreme Court case had analyzed whether other types of alleged conflict of interest might also require proof of the prejudice prong in *Strickland*. The Supreme Court stated:

> Lest today's holding be misconstrued, we note that the only question presented was the effect of a trial court's failure to inquire into a potential conflict upon the *Sullivan* rule that deficient performance of counsel must be shown. The case was presented and argued on the assumption that (absent some exception for failure to inquire) *Sullivan* would be applicable—requiring a showing of defective performance, but *not* requiring in addition (as *Strickland* does in other ineffectiveness-of-counsel cases), a showing of probable effect upon the outcome of trial. That assumption was not unreasonable in light of the holdings of Courts of Appeals, which have applied *Sullivan* "unblinkingly" to "all kinds of alleged attorney ethical conflicts," *Beets v. Scott,* 65 F.3d 1258, 1266 (C.A.5 1995) (en

11

banc). They have invoked the *Sullivan* standard not only when (as here) there is a conflict rooted in counsel's obligations to *former* clients, see, see, *e.g., Perillo v. Johnson,* 205 F.3d 775, 797–799 (C.A.5 2000); *Freund v. Butterworth,* 165 F.3d 839, 858–860 (C.A.11 1999); *Mannhalt v. Reed,* 847 F.2d 576, 580 (C.A.9 1988); *United States v. Young,* 644 F.2d 1008, 1013 (C.A.4 1981), but even when representation of the defendant somehow implicates counsel's personal or financial interests, including a book deal, *United States v. Hearst,* 638 F.2d 1190, 1193 (C.A.9 1980), a job with the prosecutor's office, *Garcia v. Bunnell,* 33 F.3d 1193, 1194–1195, 1198, n. 4 (C.A.9 1994), the teaching of classes to Internal Revenue Service agents, *United States v. Michaud,* 925 F.2d 37, 40–42 (C.A.1 1991), a romantic "entanglement" with the prosecutor, *Summerlin v. Stewart,* 267 F.3d 926, 935–941 (C.A.9 2001), or fear of antagonizing the trial judge, *United States v. Sayan,* 968 F.2d 55, 64–65 (C.A.D.C.1992).

It must be said, however, that the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application. "[U]ntil," it said, "a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 446 U.S., at 350, 100 S.Ct. 1708 (emphasis added). . . .

*Id.* at 174-75.

The parties' briefing assumes that the *Sullivan/Mickens* analysis applies to this issue even though the Supreme Court has not explicitly extended the *Sullivan/Mickens* analysis to a financial conflict of interest. The Court finds the state courts' application of the *Sullivan/Mickens* analysis to this issue was proper under the circumstances, especially considering the *Sullivan/Mickens* analysis is more lenient than *Strickland*. *See Kelley v. United States*, Case No. 16-4274-CV-C-BP, 2017 WL 1356335, at *5-6 (citing *Covey v. United States*, 377 F.3d 903, 907 (8th Cir. 2004)).

"'Adverse effect' is not the equivalent of prejudice." *Covey*, 377 F.3d at 908 (citing *Sullivan*, 466 U.S. 335 at 349-50). "To demonstrate adverse effect, [Petitioner] must identify some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Id.* (internal quotation marks and citation omitted). In his Traverse, Petitioner argues, "The conflict at issue here is that counsel's own financial interests disincentivized them from working on [Petitioner's] case." Doc. 55, pp. 34-35. Petitioner further argues, "[I]n analyzing the effect of the flat fee, the Missouri Supreme Court relied entirely on the attorneys' denial of a conflict, and failed to examine whether, based on other evidence before it, the flat fee affected their representation." Doc. 55, pp. 37-38. Petitioner concludes that the Missouri Supreme Court "unreasonably

12

misapplied" *Mickens*, which requires analysis of whether the conflict adversely affected the representation. Doc. 55, p. 38.

The Court disagrees with Petitioner. The Missouri Supreme Court did not accept counsel's testimony without analysis of the other evidence. Rather, the Missouri Supreme Court agreed with the Boone County Circuit Court in finding counsel's testimony "credible." This credibility determination means that the state courts considered counsel's testimony in light of all the evidence presented and found counsel's testimony to be truthful. The Missouri Supreme Court's holding was not an unreasonable application of *Mickens*.

Petitioner did not cite any United States Supreme Court case or any other federal court case in which a flat-fee structure was found to create an actual conflict of interest. The sources upon which Petitioner primarily relies, a 2008 American Bar Association Guideline and a 2013 Kansas Supreme Court case,[6] are insufficient to establish entitlement to habeas relief. While the Supreme Court has found ABA Guidelines are "guides to determining what is reasonable, . . . they are only guides." *Strickland*, 466 U.S. at 688.

The Court finds the Missouri Supreme Court's decision was not contrary to nor did it involve an unreasonable application of clearly established Supreme Court caselaw. Further, the Missouri Supreme Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's Ground 1 is denied.

    **2. Ground 2 – Trial counsel's failure to call lay mitigation witnesses violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.**

Petitioner argues that counsel during his second penalty-phase proceeding rendered ineffective assistance by not calling to testify the following witnesses: Chuck Tisius, Leslie Tisius, Jamey Baker, Deanna Guenther, and Lynne Silverman.

---

[6] In addition to being insufficient to support habeas relief, the Kansas Supreme Court case on which Petitioner relies, *State v. Cheatham*, 292 P.3d 318, 340 (Kan. 2013), is distinguishable on its facts. In *Cheatham*, the Kansas Supreme Court considered whether a flat-fee structure created a conflict of interest that adversely affected the representation during the guilt phase of the proceeding. The case did not concern a retrial of the penalty phase. Further, in *Cheatham* counsel testified that he was aware the defendant was indigent, and counsel took on the representation with no intention of spending his own funds to prepare the case and with no intention of spending time on the defendant's case in lieu of paid work or his outside political activities. *Id.* at 341. Counsel's representation also prevented counsel from serving as an alibi witness for defendant. *Id.*

13

Chuck Tisius is Petitioner's father. Defense counsel did not make successful contact with Chuck until Petitioner's second post-conviction proceeding, and Chuck testified at the evidentiary hearing. Petitioner argues that had Chuck been called to testify at the resentencing proceeding, Chuck would have provided mitigating evidence, including: 1) Chuck and Petitioner's mother divorced when Petitioner was young; 2) Chuck wanted primary custody but was given visitation; 3) visitation was infrequent due to Chuck's job as a police officer and Petitioner's mother's frequent failure to make him available for visits; 4) visitation became more difficult when Petitioner and his mother moved; 5) when Petitioner did visit, he was often in ragged clothing, dirty, and smelled of urine; 6) Chuck received primary custody when Petitioner was twelve years old but Petitioner had trouble adjusting to rules and routines; 7) Petitioner went back to live with his mother; 8) when Petitioner was fifteen, he again lived with Chuck but had trouble adjusting to the rules and only stayed for a short time; 9) when Petitioner was sixteen or seventeen years old, Chuck took Petitioner in after Petitioner was arrested for being a passenger in a stolen car; and 10) Chuck thought the case was dropped but had little contact with Petitioner after that incident.

Leslie Tisius was married to Chuck and was Petitioner's stepmother. Defense counsel did not contact Leslie until the second post-conviction proceeding, and Leslie testified at the evidentiary hearing. Petitioner argues that had Leslie been called to testify at the resentencing proceeding, Leslie would have provided mitigating evidence including: 1) Petitioner's mother dropped off Petitioner at Chuck and Leslie's wedding when Petitioner was three or four and Petitioner's mother did not arrange childcare for Petitioner; 2) Petitioner was a sad child, and Leslie observed signs of depression; 3) visitation with Chuck was irregular due to Chuck's work schedule and due to the fact Petitioner's mother would often not show up; 4) when Petitioner did visit, he was often dirty and smelled of urine; 5) Chuck got custody of Petitioner when he was twelve, but Petitioner had disciplinary issues and went back to live with his mother; 6) Petitioner again lived with Chuck and Leslie when he was fourteen or fifteen, but Petitioner had trouble following the household rules; and 7) Petitioner still wet the bed when he lived with Chuck and Leslie.

Jamey Baker grew up with Petitioner. Defense counsel deposed Mr. Baker in Petitioner's first post-conviction proceeding in 2003. Petitioner argues that had Mr. Baker been called to testify at the resentencing proceeding, Mr. Baker would have provided mitigating evidence including:

14

1) Petitioner was a follower; 2) Petitioner was brutally beaten by his brother, Joey; and 3) Petitioner's mother treated Joey better than Petitioner.

Deanna Guenther also grew up with Petitioner, and they were close friends for several years. Defense counsel deposed Ms. Guenther in Petitioner's first post-conviction proceeding in 2003. Petitioner argues that had Ms. Guenther been called to testify at the resentencing proceeding, Ms. Guenther would have provided mitigating evidence including: 1) Petitioner spent a significant amount of time at Ms. Guenther's home when they were young, and Petitioner called her mother, "mom"; 2) bullies picked on Petitioner at school but he would not respond; 3) Petitioner's mother was not very nice to the neighborhood kids; 4) Petitioner's brother, Joey, severely beat Petitioner; 5) Ms. Guenther recalled one incident when Joey beat Petitioner unconscious; 6) Petitioner always seemed scared; and 7) Petitioner spent a lot of time at Ms. Guenther's house to escape Joey.

Lynne Silverman was Petitioner's G.E.D. teacher in 1997 and 1998. Defense counsel in Petitioner's first post-conviction proceeding deposed Ms. Silverman in 2003. Petitioner argues that had Ms. Silverman been called to testify at the resentencing proceeding, Ms. Silverman would have provided mitigating evidence including: 1) Petitioner told Ms. Silverman in the spring of 1998 that he had nowhere to live; 2) Ms. Silverman observed that he was very upset and depressed; and 3) Ms. Silverman became particularly concerned when Petitioner expressed suicidal thoughts.

In response, Respondent points out that twelve background witnesses testified on Petitioner's behalf at the resentencing proceeding: 1) Petitioner's mother, Patricia Lambert; 2) Petitioner's half-brother, Joseph Mertens; 3) six friends and neighbors throughout Petitioner's life; 4) two former teachers; 5) a youth program manager; and 6) a prison ministry volunteer who befriended Petitioner in prison. Two medical experts also testified at the resentencing proceeding, one live and one by deposition. Respondent argues that from these witnesses, the jury learned: 1) "[t]hat [Petitioner] was generally a nice, friendly, and respectful child and young man but was shy and passive and often upset [about] how he was treated by his family[;]" 2) "[t]hat [Petitioner] was horribly treated by his brother, including being regularly and badly beaten[;]" 3) "[t]hat [Petitioner's] mother was not able to provide care for him to the extent that [Petitioner] needed help from other care providers and programs[;]" 4) "[t]hat [Petitioner] suffered from depression and had suicidal thoughts[;]" and 5) "[t]hat [Petitioner] suffered from repeated abandonment and rejection by his father, Chuck Tisius." Doc. 46, pp. 31-32.

In the last reasoned state-court decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court and held:

> Because the testimony from [Petitioner's] father and stepmother would not have unqualifiedly supported the theory put forward by the defense during the penalty phase retrial, trial counsel's failure to call them to testify was not unreasonable trial strategy. At the post-conviction relief hearing, [Petitioner's] father and stepmother both testified that [Petitioner's] mother failed to make him available for visitation or, when she did, [Petitioner] was in ragged clothing and smelled of urine. [Petitioner's] father further testified he tried to stay in contact with [Petitioner] but got no response from him or his mother. But additional testimony from [Petitioner's] father and stepmother revealed [Petitioner] refused to follow the rules while at his father's house and got into trouble at school.

> Mr. McBride testified that the defense's theory during the penalty phase was that [Petitioner] should not be sentenced to death because he was overborne by the will of Mr. Vance, who had become a father figure to him. Multiple witnesses testified during the penalty phase retrial that [Petitioner] lacked a father figure growing up due to his father's lack of involvement. While the testimony from [Petitioner's] father and stepmother presents an alternative explanation for the lack of involvement, it also placed some of the blame on [Petitioner] by portraying him as uncooperative and a troublemaker. Because the testimony from [Petitioner's] father and stepmother had the potential to present [Petitioner] in a negative light, their testimony did not wholly support the defense's theory at trial. Trial counsel, therefore, were not ineffective for failing to call them as witnesses. . . .

> As the motion court reasoned, the majority of the testimony offered by [Petitioner's] childhood friends dealt with his contentious relationship with his brother, Joey Mertens. Such testimony is cumulative to testimony from Mr. Mertens and [Petitioner's] mother that Mr. Mertens had violently beat up [Petitioner] on a regular basis. Additionally, [Petitioner] asserts trial counsel should have called [Petitioner's] former teacher, Lynn Silverman, to testify about [Petitioner] being homeless and having suicidal thoughts. Such testimony, however, would have been cumulative to testimony from [Petitioner's] mother that he had attempted suicide or threatened to attempt suicide as a child and was homeless for a time. Trial counsel, therefore, were not ineffective for failing to present cumulative testimony from [Petitioner's] childhood friends and former teacher.

*Tisius*, 519 S.W.3d at 428.

This issue was presented to the Boone County Circuit Court and the Missouri Supreme Court as a failure to call mitigating witnesses, and the resulting decisions were issued in that context. In this Court, Petitioner's state habeas second ground for relief is phrased as based on a

"failure to call lay mitigation witnesses[.]" Doc. 55, p. 42. In the body of the argument, however, Petitioner shifts the focus to what he characterizes as a "failure to investigate" the five, identified witnesses. Petitioner's recasting of the argument does not render the Missouri Supreme Court's decision as contrary to or an unreasonable application of clearly established federal law or as based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Failure to call witnesses whose testimony would be cumulative or would harm the defense is not ineffective assistance of counsel. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006) (citing *Bucklew v. Luebbers*, 436, F.3d 1010 (8th Cir. 2006); *Schlup v. Armontrout*, 941 F.2d 631, 639 (8th Cir. 1991); *Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002)). Petitioner argues the omitted evidence was not cumulative because "[t]he testimony of Jamey Baker, Deanna Guenther, and Lynn Silverman provided evidence of either (1) different facts or (2) different circumstances tending to provide a fact supported by other testimony." Doc. 55, p. 51. The Missouri Supreme Court disagreed, and that determination was reasonable. The Missouri Supreme Court also reasonably determined that testimony from Chuck and/or Leslie Tisius would have gone against the defense theory during the second penalty-phase proceeding that Petitioner considered Vance a father-figure due to lack of involvement by his own father.

Even considering Petitioner's argument that counsel failed to adequately investigate these witnesses as part of the same factual and legal bases relied on in state court, Petitioner's claim fails. *See Winfield*, 460 F.3d at 1034 (finding "a habeas petitioner's claims must rely on the same factual and legal bases relied on in state court" or else they are defaulted). To be sure, counsel's decision not to present certain testimony must be informed. *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

Counsel at the resentencing proceeding conducted a reasonable investigation of Petitioner's background in deciding which witnesses to present. Chris Slusher testified that either he or someone on the defense team reviewed all of the depositions from the earlier proceedings. Chris Slusher personally interviewed family and background witnesses. Counsel made the reasonable decision to pursue a defense theory based on Chuck Tisius's lack of involvement in Petitioner's life, and counsel conducted a reasonable investigation based on this theory. Counsel

17

made an informed decision about which witnesses to present in support of its defense theory. In addition, Petitioner neglected to show that failure to call these witnesses prejudiced his defense. *See Winfield*, 460 F.3d at 1034.

"[R]eview of the state court's determination that [Petitioner] has not proved an ineffective-assistance claim is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Worthington*, 631 F.3d at 498 (internal quotation marks and citations omitted). The Court finds that the Missouri Supreme Court's denial of this claim was not contrary to nor an unreasonable application of federal law. The Missouri Supreme Court's decision was also based on a reasonable determination of the facts in light of the evidence presented. Petitioner's Ground 2 is denied.

> **3. Ground 4 – Resentencing counsel's failure to submit all relevant portions of Dr. Peterson's prior testimony and omission of testimony supporting two additional mental-state statutory mitigating circumstances not otherwise presented to the jury—that [Petitioner] acted under the influence of extreme mental or emotional disturbance and that [Petitioner's] capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired—violated [Petitioner's] rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment at his resentencing.**

In support of Ground 4, Petitioner argues as follows:

> The principal disputed issue at sentencing was [Petitioner's] mental state at the time of the crime. The State argued that [Petitioner] exercised cool deliberation, whereas the defense argued that [Petitioner] did not form the requisite mental state for first-degree murder. However, despite possessing evidence establishing the two additional mental-state statutory mitigating circumstances, defense counsel did not present it to the jury. Had defense counsel presented this evidence, a reasonable probability exists that one juror would have struck a different balance.

Doc. 38, p. 76.

Respondent claims resentencing counsel strategically chose to present Dr. Peterson's testimony through deposition and strategically chose which portions of the testimony to include. Respondent argues that resentencing counsel chose not to present Dr. Peterson's conclusions regarding diminished capacity or extreme mental or emotional disturbance based on findings that Missouri juries do not show mercy based on such testimony, particularly in cases like Petitioner's where even his experts agreed that his IQ is above average and his "brain works well." Doc. 46, p.

18

60. Resentencing counsel Slusher testified that he felt portions of Dr. Peterson's testimony would not be convincing to the jury. Resentencing counsel also presented additional psychological evidence through Dr. Shirley's live testimony and through Dr. Daniel's deposition testimony.

In the last reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court's denial of this claim:

> "The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Johnson v. State*, 388 S.W.3d 159, 165 (Mo. banc 2012) (internal quotation omitted). At the post-conviction relief proceedings, Mr. McBride testified that the defense had opinions from three different mental health experts but decided to present live testimony only from Dr. Taylor. He further testified that the individual passages chosen from Dr. Peterson's previous testimony were based on what he and Mr. Slusher believed to be the best evidence to include at trial. Mr. Slusher testified he strategically chose not to read portions of Dr. Peterson's prior testimony because he believed Dr. Peterson's opinion would have been difficult to support in front of the jury based on the facts of the case. He further testified he had read through Dr. Peterson's testimony and believed it was something you might be able to sell to a judge in a post-conviction relief proceeding but not to a jury. The record, therefore, supports a finding that trial counsel's decisions with respect to Dr. Peterson's prior testimony were trial strategy.
>
> [Petitioner] asserts trial counsel's selection of Dr. Peterson's testimony was unreasonable trial strategy because omitted portions of Dr. Peterson's prior testimony would have supported submission of other statutory mitigating circumstances to the jury. In particular, he relies on an omitted portion of testimony in which Dr. Peterson opined that [Petitioner] was operating at a diminished capacity or acting under the influence of extreme mental or emotional disturbance at the time of the offense because [Petitioner] had not been treated for his major depression, post-traumatic stress disorder, dysthymia, or his passive dependence on others. [Petitioner] asserts he was prejudiced by trial counsel's failure to present this portion of Dr. Peterson's testimony because, had the jury been instructed about the statutory mitigating circumstances of diminished capacity and acting under the influence of extreme mental or emotional disturbance, there is a reasonable probability he would not have been sentenced to death.
>
> The motion court concluded that, even if the additional excerpts of Dr. Peterson's prior testimony had been presented to the jury, there was not a reasonable probability of a different outcome. Much of the testimony that [Petitioner] argues should have been presented related to his mental health issues and his relationship with Mr. Vance. As the motion court reasoned, that information was also presented to the jury through other witnesses, such as Dr. Taylor and Dr. Daniels, or through other excerpts of Dr. Peterson's testimony that were read into evidence. It follows that trial counsel had presented a clear view of [Petitioner's} mental health issues

19

to the jury without the additional excerpts of Dr. Peterson's testimony. Accordingly, [Petitioner] has not established that a reasonable probability exists that the result of the penalty phase would have been any different had the additional portions of Dr. Peterson's prior testimony been presented to the jury.

*Tisius*, 519 S.W.3d at 426-27.

Petitioner argues the Missouri Supreme Court's decision was "an unreasonable application of *Strickland*" because the Missouri Supreme Court "failed to consider the reasonableness of counsels' investigation supporting the decision to limit Dr. Peterson's testimony." Doc. 55, p. 85. Petitioner argues that because resentencing counsel did not interview Dr. Peterson personally, resentencing counsel's investigation was unreasonable. The Court rejects Petitioner's argument. As the Missouri Supreme Court noted, resentencing counsel "read through" Dr. Peterson's deposition testimony, and based on that testimony, resentencing counsel decided to call only Dr. Taylor live and decided which portions of Dr. Peterson's testimony would be most persuasive to a jury. Petitioner points to no information that would have come from interviewing Dr. Peterson that was not part of his deposition.

Failure to present testimony that would be cumulative or would harm the defense is not ineffective assistance of counsel. *Winfield*, 460 F.3d at 1033 (8th Cir. 2006). This Court finds that the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of *Strickland*. The Court further finds the Missouri Supreme Court's decision was based on a reasonable determination of the facts in light of the evidence presented in state court. Petitioner's Ground 4 is denied.

> ### 4. Ground 6 – [Resentencing] counsel were ineffective for failing to investigate, prepare, and rebut known aggravation being presented by the State in violation of [Petitioner's] rights as guaranteed by the First, Sixth, and Fourteenth Amendments.

Ground 6 involves two different pieces of aggravating evidence. First, at resentencing, the State called Ms. Petri, a Boone County Jail employee, who testified that Petitioner had asked her about being transferred to another facility, and she told him that he would need to fill out a form. Ms. Petri testified that Petitioner then asked her if she knew who he was, and when she indicated that she did not, Petitioner told her he was the person who killed two Randolph County guards. The State characterized this incident as "bragging" and argued Petitioner was proud of the killings. Petitioner now argues, "Reasonably effective counsel, knowing that the State of Missouri argued

20

in the first sentencing phase that Ms. Petri's testimony demonstrated 'bragging,' would have investigated and presented evidence of an alternative meaning to rebut respondent's 'bragging' characterization." Doc. 38, p. 86.

Second, a Chariton County Jail guard, Ms. Harmon, testified at the resentencing proceeding that one morning shortly after midnight, a time when lights are off in inmates' cells, she saw Petitioner in his cell with his hands raised as if he were holding a pistol and moving as if he were shooting at her. Petitioner now argues that "[r]easonably effective trial counsel would have investigated and presented evidence that included pictures demonstrating that Ms. Harmon was mistaken about the gestures as it either was impossible to see anything, or if anything was visible, it was readily subject to misinterpretation because the cell's lights were out." Doc. 38, p. 92.

As to the Boone County Jail incident, in the last reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court and held:

> In his motion for post-conviction relief, [Petitioner] alleged reasonable trial counsel would have rebutted such evidence with testimony from Dr. Peterson that [Petitioner's] statements to Ms. Petri were nothing more than adolescent-type behavior and had no bearing on the future danger he posed to correctional staff. At the evidentiary hearing, Dr. Peterson testified that [Petitioner's] statements to Ms. Petri were open to interpretation. He stated one could say maybe [Petitioner] was bragging, but one could also say maybe he was frightened and trying to tell Ms. Petri why it was important for him to be transferred. The motion court concluded there was no reasonable probability that any additional evidence about the Boone County jail incident would have altered the result of the trial because none of the rebuttal evidence conclusively refuted the evidence presented during the penalty phase retrial.

> [Petitioner] asserts he was prejudiced by trial counsel's failure to rebut Ms. Petri's testimony and offer an alternative explanation for the Boone County jail incident because the state used the incident in its closing to argue [Petitioner] was bragging about the murders. The rebuttal testimony from Dr. Peterson, however, does not establish a reasonable probability of a different outcome. Dr. Peterson testified that [Petitioner's] statements to Ms. Petri were open to interpretation—one could interpret the comments as bragging while others could interpret them as [Petitioner] expressing his fear and need to be transferred to another facility. Given the inconclusive nature of Dr. Peterson's testimony, it would not have rebutted Ms. Petri's testimony sufficient to create a reasonable probability that *the jury* would not have imposed the death penalty. The motion court, therefore, did not clearly err in finding that trial counsel were not ineffective for failing to rebut Ms. Petri's testimony.

21

*Tisius*, 519 S.W.3d at 423-24 (emphasis added).

Petitioner argues, "The Missouri Supreme Court opinion on its face unreasonably rejected *Strickland*'s one juror standard and replaced it with the entire jury." Doc. 55, p. 101. Petitioner's argument is based on the finding that Dr. Peterson's testimony "would not have rebutted Ms. Petri's testimony sufficient to create a reasonable probability that *the jury* would not have imposed the death penalty." *Id.* at 424 (emphasis added). Petitioner's reading of the Missouri Supreme Court's opinion is untenable. A Missouri jury must unanimously agree on the imposition of the death penalty. Mo. Rev. Stat. § 565.030.4. If one juror in Petitioner's case had weighed the evidence differently, then the jury could not have imposed the death penalty. The Missouri Supreme Court's holding, then, is in compliance with *Strickland.*

As to the Chariton County Jail incident, in the last, reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court and held:

> In his motion for post-conviction relief, [Petitioner] alleged trial counsel were ineffective for failing to further investigate the Chariton County jail incident and rebut Deputy Harmon's testimony with photographs depicting the lighting conditions at the jail. At the evidentiary hearing, Mr. McBride testified he did not believe lingering over the Chariton County jail incident and making a "mini trial" out of the event would advance [Petitioner's] case. Photographs taken at the Chariton County jail were introduced at the evidentiary hearing as well as testimony from both a state investigator and an investigator from the public defender's office about the jail's lighting conditions.
>
> The motion court concluded that, even if trial counsel had done more to investigate this incident, the additional evidence would not have altered the result of the penalty phase. The motion court reasoned none of the evidence presented at the post-conviction relief hearing conclusively refutes the evidence at trial and, compared to the seriousness of the murders, the probable outcome of the penalty phase would have been the same.
>
> [Petitioner] asserts reasonable counsel would have investigated and rebutted Deputy Harmon's testimony by introducing photographs that would have demonstrated that the lighting in the jail made it impossible for Deputy Harmon to see anything or, if she could see anything, it was readily subject to misinterpretation due to the poor lighting. The failure to investigate and call available and useful rebuttal witnesses to aggravating evidence can constitute ineffective assistance of counsel. *Ervin v. State*, 80 S.W.3d 817, 827 (Mo. banc 2002). "One of the primary duties of counsel at a capital sentencing proceeding is to neutralize the aggravating circumstances advanced by the state and present mitigating evidence." *Id.* Nevertheless, to establish ineffective assistance for failure to investigate, a movant

22

must demonstrate that he or she "was prejudiced as a result of counsel's unreasonable failure to investigate." *Barton v. State*, 432 S.W.3d 741, 759 (Mo. 2014).

[Petitioner] asserts trial counsel's failure to investigate and rebut Deputy Harmon's testimony was highly prejudicial because the state used the incident in its closing to argue he was unremorseful. In support of his assertion, [Petitioner] emphasizes the photographs taken at the Chariton County jail and the testimony from the public defender's investigator that nothing could be seen inside the jail cell when the lights were off.

But [Petitioner] ignores the state investigator's testimony that he could see the individual in the cell under all lighting conditions and that the photographs were darker than what could be seen in person. Rebutting Deputy Harmon's testimony with the photographs, therefore, would have resulted only in conflicting testimony about the lighting conditions and drawn more attention to the matter. As Mr. McBride testified at the evidentiary hearing, his strategy was to avoid making a "mini-trial" out of the incident. Instead, he chose to cross-examine Deputy Harmon about the incident, and she admitted that the jail's lighting affects the way things are seen and that prisoners often communicate with each other through the glass. Trial counsel will not be deemed ineffective for pursuing one reasonable trial strategy over another. *Id.* at 749. Accordingly, trial counsel's investigation and handling of the Chariton County jail aggravation evidence did not amount to ineffective assistance of counsel.

*Id.* at 424-25.

Petitioner again argues the Missouri Supreme Court misapplied *Strickland*. Petitioner argues, "The question in the *Strickland* analysis is not limited to whether there was a trial strategy. The question includes whether the strategy was reasonable." Doc. 55, pp. 102-03. Petitioner concludes that the required analysis "was never done." Doc. 55, p. 103. Again, the Court disagrees with Petitioner's reading of the Missouri Supreme Court's opinion. The Missouri Supreme Court found that resentencing counsel's decision to rebut Ms. Harmon's testimony through cross examination and to avoid making a "mini-trial" out of the incident was "one *reasonable* trial strategy[.]" *Tisius*, 519 S.W.3d at 425 (emphasis added). The Missouri Supreme Court did not misapply *Strickland* as Petitioner argues.

With respect to both the Boone County Jail incident and the Chariton County Jail incident, this Court finds that the Missouri Supreme Court's decision was neither contrary to, nor an unreasonable application of, federal law. Further, this Court finds the Missouri Supreme Court's

23

decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's Ground 6 is denied.

> **5.  Ground 13 – Resentencing counsel were ineffective for failing to move to prohibit the death penalty because [Petitioner's] mental age was less than 18.**

Petitioner was 19 years old at the time of the offense. Petitioner notes that Dr. Peterson testified by deposition at the resentencing hearing that Petitioner "displayed the reasoning ability of a young teenager and his cognitive ability was quite immature." Doc. 38, p. 146. Petitioner argues resentencing counsel were ineffective in failing to move to exclude the death penalty as a potential sentence because "[t]he same rationale that warrants not imposing death on someone whose biological age is less than eighteen at the time of the offense applies with equal force to someone whose mental age at the time of the offense is less than 18." *Id*. at p. 147.

In the last reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court's denial of this claim and held:

> [Petitioner] asserts trial counsel should have objected to the imposition of the death penalty because the Supreme Court's reasoning in [*Roper v. Simmons*, 543 U.S. 551 (2005)] is equally applicable to him in that his mental age was younger than 18 at the time he committed the offense. In *Roper*, the Supreme Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Id.* at 574, 125 S.Ct. 1183. Nevertheless, it concluded that "a line must be drawn" and that "18 is the point where society draws the line for many purposes between childhood and adulthood." *Id.* The Supreme Court, therefore, recognized the potential for a defendant's mental age to differ from his or her biological age but, nonetheless, implemented a bright line rule as to the minority age for imposition of the death penalty. It follows that any objection to the imposition of the death penalty based on *Roper* would not have been meritorious in this case. The motion court did not clearly err in finding trial counsel were not ineffective for failing to object on grounds that [Petitioner's] mental age prohibited imposition of the death penalty.

*Tisius*, 519 S.W.3d at 431.

Petitioner argues resentencing counsel had a "responsibility to advance arguments for a change in the law[.]" Doc. 55, p. 163. Whether or not Petitioner is correct, this Court's review is circumscribed by § 2254(d). The Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of federal law. Further, the Missouri Supreme Court's decision was

based on a reasonable determination of the facts in light of the evidence presented. Petitioner's Ground 13 is denied.

> **6. Ground 17 – Trial counsel were ineffective for not investigating and calling a handwriting expert to testify that Roy Vance had written a letter addressed to "Karl" to support an asserted defense in violation of the Sixth and Fourteenth Amendments.**

At trial, Petitioner sought to admit into evidence a letter that read:

Karl,

I know what Tracie is talking to you about sounds crazy but if done right it could be really simple with atleast [sic] an hour or two to get away. There's no button for help and the cameras don't record anything so they wouldn't even have a clue who did it. Under normal circumstances I would never ask but we're family me, you, and Tracie and need to be together as one. There isn't any of them that work here with enough heart to play hero as long as it's done right. I hate to even ask but it isn't anything that I wouldn't do for you and Carl with your situation with Betty they wouldn't give you any warning. You'd just be arrested and never see daylight again. Why let that happen when we could all be together. Think about it and if you decide to Tracie will explain the lay out.

Love ya my brother,
Roy

Doc. 38, p. 162. The State objected to admission of the letter, and the trial court sustained the objection on the ground there had been no foundation laid as to whether Roy Vance authored the letter. During post-conviction proceedings, a handwriting expert concluded that Vance was the letter's author.

Petitioner argues:

The trial court was correct – defense counsel did not know who wrote the document. This establishes that defense counsel were ineffective for not investigating and calling a handwriting expert who could have identified the handwriting as Vance's so that the letter could be admitted. The letter would have supported the defense theory that they had not planned to kill because Vance did not believe any of the jailers had "enough heart to play hero." Further, the letter would have rebutted the state's theory that [Petitioner] deliberated.

*Id*. at p. 163. In the last reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court's denial of the claim and held:

25

[Petitioner] argues that the letter was crucial to his defense that he only planned to assist Vance in escaping from jail and did not contemplate killing anyone. He asserts that trial counsel was ineffective for failing to retain a handwriting expert to authenticate the letter because it was crucial to his defense that he did not deliberate.

"When a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense." *State v. Davis,* 814 S.W.2d 593, 603–604 (Mo. banc 1991). If the letter had been authenticated and admitted into evidence, it would not have benefited [Petitioner's] defense. The letter was not written by [Petitioner] or addressed to him and, therefore, has little or no relevance to his state of mind at the time he shot the guards. The facts relevant to [Petitioner's] state of mind are, as discussed above, his participation in planning the escape attempt, his decision to bring the gun into the jail, and his decision to shoot each guard multiple times. The letter does not show that [Petitioner] did not deliberate prior to murdering the guards or that he was under the control of Vance and Bulington. The motion court did not clearly err in denying relief on this claim.

*Tisius v. State*, 183 S.W.3d at 213-14.

This Court finds the Missouri Supreme Court reasonably determined that even if the letter had been admitted, it would not have been relevant to Petitioner's deliberation and state of mind at the time he shot the guards. Regardless of whether counsel's performance was deficient, then, the Missouri Supreme Court's decision denying Petitioner's ineffective-assistance claim was neither contrary to nor an unreasonable application of federal law because Petitioner failed to satisfy the prejudice prong of *Strickland*. Petitioner's Ground 17 is denied.

7. **Ground 20 – Counsel's failure to object properly to the state's knowing presentation of false and misleading guilt-phase argument suggesting that [Petitioner] obtained the gun by stealth and therefore deliberated violated [Petitioner]'s constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.**

Petitioner argues:

The principal contested issue in the guilt phase was whether [Petitioner] deliberated and thereby committed first-degree murder. In alleging that [Petitioner] deliberated, the state encouraged the jury to infer that [Petitioner] stole the gun from Patsy Bulington's house. However, the state knew that Ms. Bulington – not [Petitioner] – stole the gun from Patsy Bulington's house, and the state intended to and did present such testimony during the sentencing phase of the trial. Thus, the state's

26

argument in the guilt phase encouraging the jury to infer that [Petitioner] stole the gun was misleading and improper.

Despite knowing that this argument was misleading and improper, trial counsel failed to object on those grounds. Trial counsel's failure to object to this misleading testimony constituted ineffective assistance of counsel.

Doc. 38, p. 174.

Respondent argues that Petitioner failed to show the prosecutor's argument "was false at all, much less intentionally false and misleading." Doc. 46, p. 171. Respondent claims the argument accurately stated the evidence presented at trial, that the gun was taken by stealth from Patsy Bulington's house. Respondent reasons the prosecutor did not mention who took the gun or how that fit into the plan to commit the jail break because Tracie Bulington did not testify during the guilt phase of the trial. Doc.

In the last reasoned decision on this issue, the Missouri Supreme Court affirmed the Boone County Circuit Court's denial of this claim:

Counsel was not ineffective for failing to object to the allegedly improper argument. The prosecutor's evidence and argument was not false. The evidence and argument that the weapon was taken by stealth was, as the motion court found, relevant to the issue of deliberation as it indicated that taking the gun was part of the escape plan. Who actually took the gun is secondary. Moreover, there was substantial evidence of deliberation. The evidence showed that [Petitioner] visited Vance at the jail on multiple occasions to plan the escape and test fired the gun prior to the escape attempt. [Petitioner] carried on a conversation with one of the officers for several minutes before deciding to shoot officer Acton. He then shot officer Egley. When officer Egley, wounded and lying on the ground, grabbed [Petitioner]'s leg, [Petitioner] shot him again. There was overwhelming evidence of deliberation to support the jury's verdict. Even if counsel would have had a meritorious objection to the prosecutor's statement, the failure to make the objection was not prejudicial. The motion court did not clearly err in denying relief on [Petitioner]'s claims of prosecutorial misconduct and trial counsel's failure to object thereto.

[Petitioner]'s argument that appellate counsel was ineffective for failing to raise the issue on appeal is also without merit. No objection was made, so the issue was not preserved. Appellate counsel is not ineffective for failing to raise unpreserved allegations of error. *Honeycutt v. State*, 54 S.W.3d 633, 650 (Mo.App.2001). The motion court did not clearly err in denying relief on this claim.

*Tisius*, 183 S.W.3d at 213 (footnote omitted).

27

The Court rejects Petitioner's argument. As the Missouri Supreme Court noted, there was overwhelming evidence to support the prosecutor's argument and counsel had no meritorious basis to assert that the prosecutor knowingly misstated the evidence to mislead the jury. *See id*. This Court finds that the Missouri Supreme Court's decision was based on a reasonable determination of the facts in light of the evidence presented in state court. The Court further finds the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of *Strickland*.

As a result, because any "objection would have been without merit, a claim of ineffective assistance is not viable." *Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002). Petitioner's Ground 20 is denied.

> **8. Ground 22 – [Petitioner] was denied effective assistance of counsel in his first trial when trial counsel failed to [] question prospective jurors about the distinction between first-and second-degree murder and failed to object to the verdict directors for first- and second-degree murder.**

With regard to the contested issue as to whether Petitioner was guilty of first- or second-degree murder, Petitioner claims he was denied effective assistance of counsel in his first trial when counsel failed to question prospective jurors and failed to object to the verdict director. Petitioner argues that because counsel did not ask the prospective jurors during voir dire whether they could fairly and impartially consider second-degree murder when law enforcement officers were killed, counsel did not discover whether they were biased against the lesser-included offense. As a result, Petitioner contends counsel was unable to intelligently exercise his peremptory and cause strikes.

Respondent avers Petitioner failed to allege any facts that could show a reasonable probability that the outcome of his trial would have been different if counsel had asked additional questions to the voir dire panel. Respondent states Petitioner "speculates that counsel could have discovered if jurors were biased against second-degree murder or more effectively use peremptory challenges," but that these arguments ignore the standard for prejudice under *Strickland* and the well-established principle that the jury is presumed to follow the court's instructions set forth in *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

In regard to the voir dire claim, the Missouri Supreme Court affirmed the post-conviction motion court, holding that jurors are presumed to follow the court's instructions and that the jury

28

was properly instructed on the difference between first- and second-degree murder. *Tisius*, 183 S.W.3d at 216 (citing *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo. banc 2003)). The court further stated that Petitioner's "speculative allegations do not overcome the presumption that the jury followed the instructions." *Id*.

Petitioner contends this conclusion misapplies the law concerning the right to effective assistance of counsel in that Petitioner was entitled to "both a properly instructed jury and a jury that would apply the law without bias." Doc. 38, p. 184. Petitioner relies on *Morgan v. Illinois*, 504 U.S. 719 (1992). In *Morgan*, the Supreme Court reversed the death sentence because defense counsel was not permitted to question jurors if they would automatically impose the death penalty.

This Court notes that in this case Petitioner was allowed the opportunity to conduct a thorough examination of the potential jurors. Although Petitioner argues the Missouri Supreme Court misapplied the law, this Court disagrees. Petitioner has failed to satisfy the *Strickland* standard. This Court finds the state court decision is reasonable and entitled to deference under 28 U.S.C. § 2254(d).

With respect to the jury instructions, Petitioner argues the verdict director submitted to the jury covered first-degree murder and conventional second-degree murder, but failed to provide a distinction between the two charges. Petitioner argues that the definition of deliberation in the first-degree murder verdict director focuses on the passage of time and eliminates consideration of "cool reflection." Petitioner recognizes the jury was instructed as to the statutory definition of deliberation by way of Missouri approved jury instructions; however, Petitioner contends counsel should have objected to the instructions in an effort to bring about a change in the law. Because counsel did not object to the use of the verdict director, Petitioner believes he was "denied meaningful review" of an issue previously recognized by counsel when counsel filed a pretrial motion to dismiss.

In response, Respondent notes that Petitioner's counsel raised the issue of the verdict director failing to make a meaningful distinction between first- and second-degree murder in a pretrial motion to dismiss, and objected to the verdict director on the basis that there was insufficient evidence to support a charge of first-degree murder. *See* Doc. 46-2, pp. 306-307. Respondent contends counsel's actions effectively represented Petitioner's interests, and counsel had no duty to make a fruitless objection to the pattern instructions on the grounds that they

29

improperly define deliberation. Doc. 46, pp. 184-85 (citing *Gray*, 281 F.3d at 756 n.3; *Garrett v. United States*, 78 F.3d 1296, 1303 n.11 (8th Cir. 1996)). Respondent concludes that, pursuant to *Johnson v. Armontrout*, Petitioner's argument ignores Eighth Circuit precedent that "counsel's failure to anticipate a change in the law is not ineffective assistance of counsel" because *Strickland* requires the Court to evaluate counsel's conduct from the perspective and circumstances available to him at the time. 923 F.2d 107, 108 n.3 (8th Cir. 1991).

In the last reasoned decision on this issue, the Missouri Supreme Court held:

The verdict director for first degree murder was patterned after MAI–CR 3d 313.02 and contained the following paragraph:

Third, that the defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief.

The verdict director for second degree murder was patterned after MAI 3d 313.04 and was the same as the first-degree verdict director except that it omitted the deliberation instruction. The instruction properly states the statutory definition of "deliberation." *See*, section 565.002(3). Similar challenges to this definition have previously been denied. *State v. Middleton*, 998 S.W.2d 520, 524 (Mo. banc 1999); *State v. Rousan*, 961 S.W.2d 831, 851–52 (Mo. banc 1998). Counsel is not ineffective for declining to raise an objection that is foreclosed by settled authority. *Scott v. State*, 741 S.W.2d 692, 693 (Mo.App.1987). The motion court did not clearly err in denying relief on this claim.

*Tisius*, 183 S.W.3d at 214.

This Court agrees that Missouri state law is settled on this issue and that similar challenges have previously been denied. As argued above, counsel has no duty to make a fruitless objection to the pattern instructions on the grounds that they improperly define deliberation. *Garrett*, 78 F.3d at 1303 n.11. Counsel's failure to object to the verdict director cannot be deemed deficient performance in light of the settled authority on this issue. Consequently, Ground 22 is denied.

**9. Ground 23 – [Petitioner] was denied his constitutional right to the effective assistance of counsel, due process of law, and to be free from cruel and unusual punishment when trial counsel failed to object to improper prosecutorial closing arguments during [Petitioner]'s first trial.**

Petitioner argues trial counsel was ineffective for failing to object, timely object, or properly preserve objections to the following statements during closing arguments:

30

1. That the jurors could convict [Petitioner] of second-degree murder only if they first found him not guilty of first-degree murder, (Trial 1 Tr. pp. 913, 940) and suggesting that second-degree murder need not even be considered because it was included in any finding of first degree murder, (*Id*. pp. 939-40);
2. That [Petitioner] told Tracie Bulington to "get" Officer White, who was outside, (*Id*. p. 919), suggesting that Mr. White was another intended victim;
3. That the jurors should consider the photos and x-ray of the victims' bodies in death in making their guilt phase decisions;
4. That the defense argument about deliberation was an "attempt to fool you" and was "incredible sophistry," (*Id*. p. 943); and
5. That [Petitioner]'s statements that he was sorry only came after he was caught and were "precious little consolation" to the victims. *Id*. pp. 938

Doc. 38, p. 192. Petitioner contends the failure to object to improper prosecutorial arguments constitutes deficient performance under *Strickland*.

Respondent argues Petitioner's counsel did not have a valid ground to object to the closing arguments under Missouri law. As a result, counsel cannot be ineffective for declining to make a meritless objection. Respondent further concludes that because any objection would not have been sustained under Missouri law, Petitioner cannot demonstrate that he was prejudiced by counsel's decision not to object.

The Missouri Supreme Court reviewed each of the five statements and concluded Petitioner's claims were without merit. As to the first statement, the Missouri Supreme Court reasoned,

> The jury was properly instructed on lesser-included offenses with an instruction tracking MAI–CR3d 313.04. The jury is presumed to have followed the trial court's instructions. *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo. banc 2003). Additionally, even if this argument were considered an "acquittal first" argument, the strength of the evidence of deliberation precludes a finding of prejudice.

*Tisius*, 183 S.W.3d at 217.

As to the second statement, the Missouri Supreme Court held that "[a] prosecutor may argue reasonable inferences from the evidence." *Id*. (citing *Middleton v. State*, 103 S.W.3d 726, 742 (Mo. banc 2003)). The Missouri Supreme Court further explained that "the uncontradicted testimony that [Petitioner], gun in hand and having just shot Acton, was yelling 'get him,' is highly relevant to the [Petitioner's] deliberation on the murders. Whether he was referring to White or Egley is secondary." *Id*.

31

Concerning the third statement, the Missouri Supreme Court found "the photographs were admissible," and "[c]ounsel is not ineffective for failing to make a meritless objection." *Id.* (citing *Middleton*, 103 S.W.3d at 741).

As to the fourth statement, the Missouri Supreme Court explained,

> The prosecutor's argument was response to defense counsel's argument that [Petitioner] had not deliberated because Deputy Egely was not killed immediately with a shot at point blank range. However, defense counsel had earlier argued that [Petitioner] "certainly wasn't coolly and calmly reflecting on whether or not to shoot Jason Acton." The prosecutor's argument was thus directed at pointing out a perceived inconsistency between the defense argument that an immediately fatal, point blank shot would have shown deliberation in one instance but not the other. Comments directed at the tactics of defense counsel are permissible. *State v. Collins*, 150 S.W.3d 340, 350 (Mo.App. S.D.2004); *State v. Hanson*, 974 S.W.2d 617, 619 (Mo.App. E.D.1998). The motion court did not clearly err in denying this claim.

*Id.* at 217-18.

Lastly, concerning the fifth statement, the Missouri Supreme Court noted that Petitioner "argued that his remorse indicated that he did not deliberate," and "[a] prosecutor is entitled to rebut a defense argument." *Id.* at 218 (citing *State v. Jones*, 979 S.W.2d 171, 177 (Mo. banc 1998)).

In denying Petitioner's arguments in this claim, the Court finds the Missouri Supreme Court reasonably determined the evidence and the reasonable inferences derived therefrom were sufficient to show that counsel's decision not to object to the statements was not ineffective assistance and any potential objection to the statements would have been meritless. As previously stated, a failure to make a meritless objection does not amount to ineffective assistance of counsel. *Garrett*, 78 F.3d at 1303 n.11. Thus, Ground 23 is denied.

> **10. Ground 24 – [Petitioner] was denied effective assistance of counsel when trial counsel failed to object to the assistant attorney general's statement that Mr. Fusselman, the elected prosecutor, had requested his assistance because "Randolph County has not had the misfortune of having that many murders so it is not something with which he comes into contact with [sic] regularly."**

Petitioner contends he was denied effective assistance during voir dire when counsel failed to object to the prosecutor's statement that he was assisting with the trial because "Randolph County has not had the misfortune of having that many murders so it is not something with which he comes into contact with [sic] regularly." Doc. 38, p. 202. Petitioner argues the statement stated

32

facts outside the record and "emphasize[d] the seriousness of the offense in a way not supported by the evidence at trial." *Id*. Petitioner further suggests the intent of the statement was to focus the "jury on the fact that the peaceful county of Randolph had suffered an unparalled tragedy." *Id*.

In response, Respondent argued this claim fails to show that counsel was ineffective or that Petitioner was prejudiced by counsel's choice to not object to the statement. Specifically, Respondent states that "[t]he prosecutor's comment that Randolph County had not had many murders did not suggest in any way that [Petitioner]'s case was worse than other murders or that [Petitioner] deserved the death penalty." Doc. 46, p. 200. Respondent claims the prosecutor's comment minimized the seriousness of Petitioner's case by pointing out prosecutor Fusselman's inexperience with murder cases.

The Missouri Supreme Court affirmed the denial of Petitioner's post-conviction motion, explaining that "[t]he prosecutor's explanation did not suggest a qualitative difference between [Petitioner]'s case and other murder cases." *Tisius*, 183 S.W.3d at 216. The court held that Petitioner was not prejudiced by the comment and trial counsel was not ineffective for failing to object to the prosecutor's comment. *Id*.

Petitioner argues this reasoning is an unreasonable interpretation of the facts. Petitioner claims the "plain language of the prosecutor's statement indicates this case is unusual." Doc. 55, p. 251. Petitioner further alleges the statement implies this case is important because it was not mentioned whether the attorney general helped with the other Randolph County murders. *Id*. at pp. 251-252. Petitioner concludes that "a juror likely would interpret the attorney general's assistance in this case as being significant." *Id*. at p. 252.

Overturning a state court decision requires satisfaction of a high standard, which Petitioner has failed to do. In denying Petitioner's claim, the Court finds Petitioner has failed to allege facts that would demonstrate a reasonable probability that the outcome of Petitioner's trial would have been different if counsel had objected to the comment made during voir dire. *See Strickland*, 466 U.S. at 687. Consequently, because Petitioner has failed to provide clear and convincing evidence that the state court's findings are erroneous, the Court cannot deem counsel's representation to be ineffective. Petitioner is not entitled to habeas relief on this basis, and Ground 24 is denied.

33

**11. Ground 26 – Appellate counsel was constitutionally ineffective for not challenging on appeal the admission and display on a movie-screen of autopsy photos of the deceased men thereby denying [Petitioner] due process, a fundamentally fair trial, and effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments.**

Petitioner alleges that appellate counsel was ineffective for failing to raise on direct appeal issues regarding the admission and display on a large screen ten autopsy photos of the two victims. Petitioner argues the sole issue in the guilt phase was whether Petitioner acted with deliberation and there was no dispute as to the cause of death of the two victims. As a result, Petitioner contends it was prejudicial to show the jury x-rays taken of the officers' heads and the autopsy photographs depicting the victims on the gurney from various angles and with intubation tubes still inserted in the nose and throat of one of the officers. The court overruled the objection to the admission of the ten photographs and the display of these photographs to the jury on a "movie-size screen." On direct appeal, appellate counsel did not raise this claim.

Respondent states appellate counsel testified that after her review of the record, she believed that a claim challenging the admission of the photographs would not have merit and that challenging the presentation of the photographs to the jury did not appear to be prejudicial to Petitioner. Respondent argues that, pursuant to *Strickland*, strategic choices made after a thorough review of the relevant facts and law are "virtually unchallengeable." 466 U.S. at 691.

In the last reasoned decision on this issue, the Missouri Supreme Court concluded:

At trial, the State's first witness was the medical examiner. During the examiner's testimony, the prosecutor moved to admit the ten autopsy photos. Trial counsel objected based upon an earlier motion in limine and argued that the cause of death was not at issue and the photos were unduly prejudicial. The photographs were admitted. At the evidentiary hearing, appellate counsel testified that while she believed the admission of the photographs may have "technically" been a good point, she did not believe a point on this issue "had much of a chance on appeal." Counsel also noted that the State does not have to stipulate to facts and is required to prove the death of the victims. The motion court found that appellate counsel had a reasonable strategic motive for not raising the issue.

The autopsy photographs were relevant to the issues of deliberation and intent because they showed the nature, location, and extent of the wounds. *See*, *State v. Ervin*, 979 S.W.2d 149, 159 (Mo. banc 1998)(multiple wounds support inference of deliberation). The graphic nature of the photographs does not necessarily compel the conclusion of undue prejudice. "Insofar as photographs tend to be shocking or gruesome, it is almost always because the crime is shocking or

34

gruesome." *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). The projection of previously admitted photographs is permissible when the enlarged photographs serve legitimate purposes. *State v. Wolfe*, 13 S.W.3d 248, 263– 264 (Mo. banc 2000). A claim of error regarding the admission or projection of the photographs would not likely have required reversal on appeal. The motion court did not clearly err in finding that appellate counsel was not ineffective.

*Tisius*, 183 S.W.3d at 215.

Petitioner argues the Missouri Supreme Court's decision "never, ever identified what those legitimate purposes could be for the projection of the images." Doc. 55, p. 262. Petitioner explains the images were not clear, and there could be no legitimate purpose to project the enlarged graphic photographs in a manner that did not provide detail to make the presentation probative and non-cumulative evidence. Petitioner cites to *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001), for the proposition that *Strickland* does not require that the issue be a "dead-bang winner" for a finding of ineffective assistance of counsel when it is not raised.

Respondent relies on *Smith v. Murray*, to argue that counsel must focus on the most meritorious claims on appeal and counsel's decision not to raise a claim she believed to be meritless and to focus on the best issues for appeal is the "hallmark of effective appellate advocacy." 477 U.S. 527, 536 (1986). Petitioner counters that Respondent's reading of *Smith* is oversimplified. Petitioner reasons that unlike Petitioner's case, *Smith* involved a procedural default question where appellate counsel failed to anticipate a change in the law. Thus, Petitioner reasons that this case "is premised upon well-settled principles of law that invalidate the projection of gruesome photos when there is no legitimate purpose," and as such, appellate counsel was deficient for failing to raise this ground.

The Missouri Supreme Court reasoned the photographs were relevant to the issues of deliberation and intent. As *Strickland* made clear, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Thus, the Court finds Petitioner has failed to demonstrate facts to support a claim of ineffective assistance of counsel and the Missouri Supreme Court's decision is entitled to deference. Ground 26 is denied.

35

12. **Ground 27 – Trial counsel were ineffective for failing to object at the instruction conference to Instruction No. 4, the reasonable doubt instruction, in violation of the Sixth and Fourteenth Amendments provided to the jury at the first trial.**

Petitioner argues Instruction Number 4 "improperly lowered the state's burden of proof below that required by due process and equated its 'firmly convinced' standard with a clear and convincing standard." Doc. 38, p. 211. Before the trial began, Petitioner's counsel objected to the pattern instruction defining reasonable doubt and filed motions to modify the instruction. During the guilt phase instruction conference, counsel failed to renew the objection. Consequently, Petitioner contends that "[i]f the jury is mis-instructed about the state's burden of proof and counsel does not move to rectify the error, the accused's state and federal constitutional rights to due process, a fundamentally fair trial before a properly instructed jury and effective assistance of counsel are denied." *Id*. at p. 212.

After the verdict, the trial court informed the parties that the jury had underlined the words "common sense" and bracketed the words "the law does not require proof that overcomes every possible doubt." Doc. 46-2, p. 370. Petitioner claims the jury's notation highlights the merit and prejudice to Petitioner.

In response, Respondent contends counsel had no duty to make a meritless or fruitless objection and "counsel's failure to anticipate a change in the law is not ineffective assistance of counsel" because *Strickland* requires the Court to evaluate counsel's conduct from the perspective and circumstances available to him at the time. *Gray v. Bowersox*, 281 F.3d at 256 n.3. Respondent states "[b]oth the motion court and the Missouri Supreme Court found that [Petitioner]'s complaint about the instruction was meritless, so there is no probability that counsel's objection would have changed the outcome of the trial or on appeal." Doc. 46, p. 216.

The Missouri Supreme Court reasoned as follows:

> Similar attacks on MAI–CR 3d 302.04 have been repeatedly rejected by this Court. *State v. Brown*, 998 S.W.2d 531, 552 (Mo. banc 1999); *State v. Harris*, 870 S.W.2d 798, 811[28] (Mo. banc 1994), *State v. Debler*, 856 S.W.2d 641, 652 (Mo. banc 1993). Counsel is not ineffective for declining to raise an objection that is foreclosed by settled authority. *Scott v. State*, 741 S.W.2d 692, 693 (Mo.App.1987). The motion court did not clearly err in denying relief on this claim.

*Tisius*, 183 S.W.3d at 215.

36

As argued by Respondent, this Court is limited to reviewing "counsel's conduct from the perspective and circumstances available to him at the time" and cannot create a new rule of constitutional law that would invalidate Missouri's reasonable doubt instruction. *Gray*, 281 F.3d at 756, n.3; *Teague v. Lane*, 489 U.S. at 297-98; *White v. Woodall*, 572 U.S. at 426. The Court finds Petitioner has failed to demonstrate counsel was ineffective for failing to raise an objection that is foreclosed by settled authority or that counsel's actions prejudiced Petitioner. Thus, the Court finds the Missouri Supreme Court's decision is reasonable and entitled to deference under § 2254(d). Ground 27 is denied.

> **13. Ground 28 – Trial counsel were ineffective for not objecting to references to and the admission of [Petitioner]'s t-shirt, which depicted and bore the legend "Guardians of Paradise," because this denied [Petitioner]'s due process, freedom of speech and association, a fundamentally fair trial, and effective assistance of counsel, guaranteed by the First, Sixth, and Fourteenth Amendments.**

During the guilt phase, the prosecutor questioned Officer David Hall, the Missouri State Highway Patrol criminal investigator, as to the clothing recovered from Petitioner upon his arrest. The prosecutor presented evidence of Petitioner's black t-shirt which bore the slogan "Guardians of Paradise" on the front and back. Counsel did not object to the description of the t-shirt, but objected to the admission of the t-shirt as a product of a warrantless arrest and seizure without probable cause. Petitioner contends the t-shirt suggested Petitioner was a member of or endorsed an anti-social group. Petitioner argues that counsel failed to effectively represent Petitioner by neglecting to object to the reference to the image and slogan and to the admission of the t-shirt on the "basis as irrelevant to any issue before the jury and as inflammatory and highly prejudicial." Doc. 38, p. 216.

Respondent states Petitioner failed to meet his burden of proving that counsel was ineffective for failing to object and that but for counsel's decision there is a reasonable probability that the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687. Respondent notes that neither the motion court nor the Missouri Supreme Court found the shirt to have an evil connotation or connection to an anti-social group. Respondent further claims Petitioner has failed to rebut the state court findings about the t-shirt by clear and convincing evidence pursuant to 28 U.S.C. § 2254(d).

37

The Missouri Supreme Court affirmed the post-conviction motion court's decision, finding that "[w]ithout evidence as to what, if anything, the shirt referenced or meant, the motion court could have only sustained [Petitioner]'s point through speculation. [Petitioner] did not carry his burden, and there is no reasonable probability that [Petitioner] was convicted and sentenced based upon the images on the shirt." *Tisius*, 183 S.W.3d at 214.

Here, as argued by Respondent, Petitioner is only able to speculate that the jury would have attached some evil meaning to the t-shirt. However, "there is no evidence that the image and slogan on [Petitioner]'s t-shirt had *any meaning at all*, much less a nefarious one." Doc. 46, p. 221. Petitioner has failed to meet his burden of proving that counsel was ineffective for failing to object to the admission of the t-shirt and that but for counsel's decision there is a reasonable probability that the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687. Because the Court finds that the Missouri Supreme Court's denial of this claim was not contrary to nor an unreasonable application of federal law, Petitioner's claim fails. Ground 28 is denied.

## B. Procedural Default

"A claim is procedurally defaulted if a habeas petitioner failed to raise it in state proceedings." *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009) (citation omitted). Petitioner admits that several of the grounds for relief he raises were procedurally defaulted. Petitioner argues, however, that the exception announced by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012), applies allowing this Court to review his otherwise procedurally defaulted claims.

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the Supreme Court held, "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" *Maples v. Thomas*, 565 U.S. 266, 280 (citing *Coleman*, 501 U.S. at 753).

A "narrow exception" was announced in *Martinez*. 566 U.S. at 9. In *Martinez*, the Supreme Court recognized a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *Id.* at 17. To overcome procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel

38

was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim has some merit." *Id.* at 13. The second prong is evaluated by determining whether Petitioner has made a substantial case of ineffective assistance of trial counsel under the *Strickland* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014). As discussed above, to show ineffective assistance of counsel under *Strickland*, Petitioner must show (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687.

> **1. Ground 3 – [Petitioner] was deprived of his right to the effective assistance of counsel under the Sixth, Eighth, and Fourteenth Amendments when counsel failed to adequately and properly investigate, develop, and present significant expert mitigating evidence.**

Petitioner argues that counsel at the resentencing proceeding "failed to meet with potential mitigation witnesses, collect and review records, prepare a social history, develop a coherent mitigation strategy, and seek appropriate expert evaluations of [Petitioner]." Doc. 38, p. 52. Petitioner further argues that counsel were ineffective in failing to present mitigating evidence from a trauma expert, a neuropsychologist, a neuro-psychiatrist, and a prison adjustment/security expert. Petitioner admits he has failed to preserve this claim for federal review by not raising it in state-court proceedings. Accordingly, Petitioner must satisfy the narrow exception to a procedural default announced in *Martinez* in order for the Court to consider this claim.

Petitioner argues counsel at the resentencing proceeding were ineffective in not calling a trauma expert. Dr. Paula Lundberg-Love, Ph.D. conducted an investigation and prepared a report in connection with this habeas proceeding. Dr. Lundberg-Love found Petitioner experienced six out of ten possible Adverse Child Experiences ("ACEs"), and he developed PTSD. Petitioner argues that "[r]easonable counsel would have retained a trauma expert to educate the jury beyond its simplistic defense mitigation narrative that [Petitioner] had 'a bad childhood' and instead explained how high ACE factors lead to neurological consequences that alter the brain permanently and how these ACE factors impacted his behavior." Doc. 38, p. 58.

Petitioner argues counsel at the resentencing proceeding were ineffective in not presenting adequate testimony from neuropsychologist. Petitioner admits that resentencing counsel consulted with a neuropsychologist but argues the evaluation was inadequate. Dr. Dale Watson conducted an investigation and prepared a report in connection with this habeas proceeding. Dr. Watson

concluded Petitioner "has memory problems associated with temporal lobe dysfunction[,]" "motor deficits" suggesting frontal lobe damage, and "deficiencies in his ability to identify smells, which are connected with dysfunction in the orbital frontal lobes." Doc. 38, pp. 60-61. Petitioner argues the lack of complete testing data affected conclusions drawn by the neuropsychiatrist during the resentencing proceeding.

Petitioner argues counsel at the resentencing proceeding were ineffective in not presenting adequate testimony from a neuropsychiatrist. Petitioner admits he was previously evaluated by Dr. Peterson who presented expert testimony by deposition at the resentencing proceeding. Dr. George Woods conducted an investigation and prepared a report in connection with this habeas proceeding. Petitioner argues, "Dr. Woods, who is a neurologist as well as a psychiatrist, was better able to integrate [Petitioner's] brain dysfunction with his psychiatric disorders using Dr. Watson's data." Doc. 38, p. 62. As a result, Dr. Woods diagnosed Petitioner with several neurological and psychiatric disorders: complex post-traumatic stress disorder, frontotemporalstriatal dysfunction, and dependent personality disorder. Petitioner argues that in addition to the three mitigating circumstances presented to the jury by resentencing counsel, i.e. 1) Petitioner had no significant history of prior criminal activity, 2) Petitioner acted under extreme duress or under substantial domination of another person; and 3) Petitioner's age, Dr. Woods's testimony would have supported two additional mitigating circumstances: 1) Petitioner acted under the influence of extreme mental or emotional disturbance, and 2) Petitioner's ability to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired.

Petitioner argues counsel at the resentencing proceeding were ineffective in not calling a prison adjustment/security expert to testify. James Aiken conducted an investigation and prepared a report in connection with this habeas proceeding. Mr. Aiken opined that Petitioner could "be safely confined and managed within the Missouri Department of Corrections prison system for the remainder of his life." Doc. 29-1, p. 193. Petitioner argues resentencing counsel were ineffective in failing "to reasonably and competently investigate, prepare, and present available *Skipper*[7] evidence [i.e. evidence of good behavior during incarceration] at the resentencing." Doc. 38, p. 69. Petitioner argues that such testimony from a prison adjustment/security expert was particularly

---

[7] *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986).

necessary in this case because the state presented aggravating evidence that Petitioner's behavior during incarceration predicted future dangerousness.

Three psychological experts testified at the resentencing proceeding for Petitioner. Resentencing counsel presented strategically-chosen selections from Dr. Peterson's testimony at Petitioner's first penalty-phase proceeding. Resentencing counsel also presented prior testimony by Dr. A.E. Daniel, who treated Petitioner in jail for his mental disorders. Dr. Shirley Taylor testified in person at the resentencing proceeding, regarding the effects of Petitioner's childhood, Petitioner's mental disorders, and the domination Vance exerted over him.

As previously stated, Petitioner admits this claim has not been preserved for appellate review because it was not raised in the state court. Missouri Supreme Court Rule 29.15 "provides the exclusive procedure by which [a person convicted of a felony] may seek relief in the sentencing court for" a claim that the conviction or sentence violates the United States Constitution, including claims for ineffective assistance of trial or appellate counsel. Rule 29.15(a). A movant waives any claim known to him "that is not listed in the motion." Rule 29.15(d). Petitioner argues, however, that the *Martinez* exception to a procedural default applies.

In order to satisfy the *Martinez* exception, Petitioner must show that counsel at the second initial-review collateral proceeding were ineffective under the *Strickland* standards in failing to raise these issues, and Petitioner must show that the underlying claims of ineffective assistance by resentencing counsel are substantial. Although Petitioner admits that resentencing counsel did present expert psychological evidence, Petitioner argues it was not comprehensive enough. Petitioner argues resentencing counsel was constitutionally deficient in its investigation of these issues because resentencing "counsel relied exclusively on the work of lawyers before them[,]" and one group "of those lawyers had already been declared ineffective by a state court due to their investigative failures." Doc. 55, p. 60-61.

Petitioner's argument is unpersuasive. It is important to note that the constitutional deficiency requiring Petitioner's resentencing proceeding had nothing to do with the presentation of expert testimony. Prior to the murders, Petitioner had been listening to a particular rap song on repeat. At the first penalty-phase proceeding, the state played the wrong song to the jury titled "Mo'Murda'." The Boone County Circuit Court found Petitioner's trial counsel were ineffective in several respects in relation to the admission of this evidence. Doc. 46-13, pp. 96-97. Counsel at

41

the first collateral proceeding also argued that trial counsel had been ineffective in only calling Dr. Shirley to testify and by not calling a psychiatrist such as Dr. Peterson whose testimony had been developed in preparation for the first collateral proceeding. Doc. 46-13, pp. 97-98. The Boone County Circuit Court found that counsel in the first penalty-phase proceeding had not rendered ineffective assistance by only calling Dr. Shirley Taylor to testify and by not calling a psychiatrist. Doc. 46-13, p. 98.

"Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 1137 S.Ct. 2058, 2067 (2017) (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). In addition, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Forrest v. Steele*, 764 F.3d 848, 858 (8th Cir. 2014) (internal quotation marks and citation omitted).

The Court finds that counsel in the second initial-review collateral proceeding did not render ineffective assistance by not raising Petitioner's claim that resentencing counsel should have called additional experts. Counsel in the second initial-review collateral proceeding raised nine points for review including claims based on the omission of certain passages from Dr. Peterson's testimony and the failure to call certain mitigating witnesses. Doc. 46-29. Counsel presented evidence during a two-day evidentiary hearing with fifteen live witnesses and almost 100 exhibits. The Court finds Petitioner's claim is not stronger than the grounds raised by counsel in the second initial-review collateral proceeding.

Counsel's performance in the second initial-review collateral proceeding was not deficient where 1) resentencing counsel's witness selection is afforded deference, 2) much of the testimony Petitioner argues should have been presented at resentencing is cumulative of testimony already provided by Dr. Peterson, Dr. Shirley, and Dr. Daniel, and 3) where counsel at the second, initial-review collateral proceeding conducted a thorough investigation of all issues for appeal and chose which points to pursue based on professional judgment. Further, Petitioner has not shown that he was prejudiced by counsel's decision not to include this claim in the second initial-review collateral proceeding in that Petitioner has not shown a reasonable probability that the result of the

second initial-review collateral proceeding would have been different. Petitioner has not established "cause" or "actual prejudice" under *Coleman/Martinez*, and the Court finds that failure to consider the claim will not result in a fundamental miscarriage of justice.

Petitioner has procedurally defaulted this claim. Petitioner argues that he is entitled to a *Trevino* hearing. The Court disagrees. *See Thomas v. Payne*, Nos. 17-1833/17-2380, 2020 WL 2601351, at *6 (8th Cir. May 22, 2020) (stating "even if an applicant alleges that his counsel's ineffectiveness caused him to omit an ineffective-assistance-at-trial claim in his initial-review collateral proceeding, a district court may still deny a hearing if it finds the claim not 'substantial' or 'potentially meritorious'"). Petitioner's claim is not substantial or potentially meritorious, and Petitioner's Ground 3 is denied.

> **2. Ground 5 – [Petitioner] was denied his constitutional right to effective assistance of counsel when [resentencing][8] counsel failed to prepare their expert witness, Dr. Shirley Taylor, by informing her of evidence that would be offered at trial concerning statements and conduct of [Petitioner] while he was in jail before his resentencing hearing.**

Petitioner argues:

> On cross-examination, the state inquired of Dr. Taylor regarding: 1) [Petitioner's] alleged statements, while in jail, made to Officer Petri, asking whether the officer knew who he was and that he had killed two guards; and, 2) [Petitioner's] alleged gesture made to another jail guard simulating shooting a gun at her. Resentencing counsel failed to inform Dr. Taylor of these incidents, and thus, she admitted that she was unfamiliar with these incidents. She said she would need to know about the "context" of the incidents. . . . Thus, resentencing counsels' shortcomings left Dr. Taylor in a position where she could not credibly and effectively respond.

Doc. 38, p. 84. The Missouri Supreme Court found this claim was waived because it was not raised in the second initial review-collateral proceeding, but was raised for the first time in front of the Missouri Supreme Court. The Missouri Supreme Court held:

> In his amended motion, [Petitioner] alleged that, if Dr. Taylor had been informed of the incidents in the jails, "she could have mitigated the State's aggravating evidence by explaining how [Petitioner's] background and mental health affected his behavior in those situations." The motion court concluded [Petitioner] abandoned this claim because Dr. Taylor did not testify at the evidentiary hearing;

---

[8] Petitioner's Petition refers to "trial counsel," but the argument section makes clear that Petitioner is referring to resentencing counsel. Doc. 38, p. 84.

43

therefore, he presented no evidence as to how additional preparation would have changed her testimony. To avoid the absence of Dr. Taylor's testimony at the evidentiary hearing, [Petitioner] now claims that the failure to prepare Dr. Taylor permitted her to be impeached by the state. But defects in post-conviction relief pleadings "cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014) (internal quotation omitted). Claims not raised in a motion for post-conviction relief are deemed waived and cannot be reviewed on appeal. *Id.* Accordingly, this Court cannot review the claim [Petitioner] now raises on appeal.

*Tisius*, 519 S.W.3d at 425.

Petitioner now argues, "Post-conviction counsel's failure to present this ground fully, including presenting evidence, was ineffective under the *Strickland* standard." Doc. 55, p. 93. Petitioner concludes, "Reasonably effective post-conviction counsel would have presented this ground, which was 'substantial' within the meaning of *Martinez*." Doc. 55, p. 93. Petitioner's argument that this ground was not "presented" at the second initial-review collateral proceeding and that post-conviction counsel's failure to "present" it is excused by *Martinez*, was foreclosed by the Eighth Circuit's recent decision in *Thomas*. 2020 WL 2601351 at *4-5.

In *Thomas*, the Eighth Circuit held that post-conviction counsel's failure to present any evidence in support of a particular claim was not a procedural default. The Court held, "The weakness of support for the claims in the [post-conviction] petition and hearing has no bearing on whether the claims were actually presented, much less whether the state court's 'judgment rests on a state procedural bar.'" *Thomas*, 2020 WL 2601351, at *5 (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)). In *Thomas*, the petitioner did not raise the claim at issue on appeal from the post-conviction proceeding. The Eighth Circuit further held, "[I]t was not [Petitioner's] *failure to raise* the guilt-and-penalty ineffective-assistance claims that triggered procedural default, because he did, in fact raise them. Rather, it was his *failure to appeal* that resulted in the default." *Id.*

Here, too, it was not Petitioner's failure to raise an argument during the second initial-review collateral proceeding that Dr. Shirley Taylor was not prepared by counsel to testify that resulted in default. It was Petitioner's failure to appeal the point on the same legal and factual ground that had been raised in the second initial-review collateral proceeding that resulted in procedural default, which is a circumstance to which *Martinez* does not apply.

As in *Thomas*, the Court finds "habeas relief cannot be granted" on this claim, and no miscarriage of justice will result. 2020 WL 2601351, at *5. Ground 5 is denied.

44

3. **Ground 8 – [Petitioner] was denied effective assistance of counsel when [resentencing] counsel failed to present evidence that [Petitioner] was under the substantial domination of Roy Vance when the offense was planned and committed.**

Petitioner admits this claim has been procedurally defaulted. Petitioner argues, however, that the narrow exception announced in *Martinez* applies allowing this Court to review the claim. Petitioner recognizes that resentencing counsel presented evidence in support of the mitigation theme that Petitioner was controlled by Roy Vance. Petitioner states, "Having espoused that theory, however, [resentencing counsel] did not investigate critical witnesses and failed to present the evidence readily available to them in support of their theory." Doc. 55, p. 116.

Petitioner alleges resentencing counsel was ineffective in cross-examining Tracie Bulington because she could have been "an excellent defense witness." Doc. 55, p. 113. Petitioner claims resentencing counsel was ineffective in cross-examining Thomas Antle who "could have provided additional information[]" about Vance's and Petitioner's relationship. Doc. 38, p. 111. Petitioner argues resentencing counsel was ineffective in not calling James Foote, Derek S. Freese, Richard Lockett, and Gerardo Arteaga to describe "Mr. Vance's manipulation and grooming of Mr. Tisius." Doc. 55, p. 113. Petitioner asserts resentencing counsel should have introduced Mr. Vance's prison records to establish "his consistent escape attempts." Doc. 55, p. 113.

In order to cure the procedural default under *Martinez*, Petitioner must show that counsel in Petitioner's second initial-review collateral proceeding was ineffective under the *Strickland* standards. Petitioner cannot make such a showing. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. *Davila*, 1137 S.Ct. at 2067 (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith*, 528 U.S. at 288). In addition, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Forrest*, 764 F.3d at 858 (internal quotation marks and citation omitted). The Court finds Petitioner's claim is not stronger than the grounds raised by counsel in the second initial-review collateral proceeding, and the Court finds counsel's performance was not deficient.

Petitioner has not shown that he was prejudiced by counsel's decision not to include this claim in the second initial-review collateral proceeding because Petitioner has not shown a

45

reasonable probability that the result of the second initial-review collateral proceeding would have been different. Petitioner has not established "cause" or "actual prejudice" under *Coleman/Martinez*, and the Court finds that failure to consider the claim will not result in a fundamental miscarriage of justice.

Finally, the Court finds that the underlying claim that resentencing counsel was ineffective is not "substantial." The evidence Petitioner argues should have been introduced is either cumulative of evidence that was already presented, potentially harmful to the defense, and/or inadmissible as hearsay. Failure to present testimony that would be cumulative or would harm the defense is not ineffective assistance of counsel. *Winfield*, 460 F.3d at 1033 (8th Cir. 2006).

Petitioner has procedurally defaulted this claim. Petitioner argues that he is entitled to a *Trevino* hearing. The Court disagrees. *See Thomas*, 2020 WL 2601351, at *6 (stating "even if an applicant alleges that his counsel's ineffectiveness caused him to omit an ineffective-assistance-at-trial claim in his initial-review collateral proceeding, a district court may still deny a hearing if it finds the claim not 'substantial' or 'potentially meritorious'"). Petitioner's Ground 8 is denied.

    **4. Ground 9 – The [resentencing] court erred in allowing the improper cross-examination of the defense expert, psychologist Dr. Shirley Taylor, over objection in violation of [Petitioner's] rights to due process, trial by a fair and impartial jury, and freedom from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments.**

Petitioner argues the State's cross-examination of Dr. Taylor was improper in numerous ways: 1) the State's cross-examination about a psychological study called "the Rosenham Study" lacked a proper foundation and was irrelevant and misled the jury;[9] 2) the State's cross-examination about a book titled "A Child Called It" was based on hearsay, lacked a proper foundation, and was irrelevant; and 3) the State's cross-examination about the fact Petitioner did not plead guilty to murder was irrelevant and misled the jury.

———————————————

[9] Respondent states that Petitioner also argues that cross-examination regarding "the Rosenham Study" was based on hearsay. Doc. 46, p 107. The Court did not identify this argument in Petitioner's filings. To the extent Petitioner intended to raise a hearsay argument with respect to the State's cross-examination regarding "the Rosenham Study," the Court denies this claim on the same basis that the Court denies the hearsay argument Petitioner raised with respect to the State's cross-examination regarding "A Child Called It."

46

Respondent and Petitioner agree that Petitioner preserved the argument about the relevance of cross-examination regarding the book "A Child Called It," and the Missouri Supreme Court reviewed this claim on the merits. In the last reasoned decision on this issue, the Missouri Supreme Court concluded:

> In this case, the evidence was admissible. In questioning a defendant's expert, the State is afforded wide latitude in "the cross-examination of witnesses to test qualifications, credibility, skill or knowledge, and the value and accuracy of the expert's opinion." *State v. Zink*, 181 S.W.3d 66, 72 (Mo. banc 2005) (quoting *Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003)). Dr. Taylor, [Petitioner's] expert, testified that she was familiar with the book and its author, a man who suffered a similarly horrible childhood, but who overcame his background to become a productive member of society. These questions were logically relevant to refute Dr. Taylor's assertions that [Petitioner's] poor childhood necessarily led him to suffer some mental illnesses and to commit murder to earn the approval of another. Additionally, it was not unduly prejudicial. It merely demonstrated that a poor childhood does not necessarily result in mental illness and a willingness to commit murder.

*Tisius*, 362 S.W.3d 398, 408 (Mo. banc 2012).

Petitioner argues in this federal habeas proceeding that "A Child Called It" "is a single, anecdotal hearsay account that bears no relevance to [Petitioner's] childhood or how [Petitioner's] childhood issues affected him." Doc. 38, p. 125. Petitioner further argues "the prejudicial impact of this evidence outweighed any probative value." Doc. 38, p. 126. Petitioner concludes that the Missouri Supreme Court's denial of this point violated *Strickland*. Doc. 38, p. 131. This Court disagrees and finds that the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. The Court further finds that the Missouri Supreme Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

The Missouri Supreme Court reviewed two of Petitioner's arguments for plain error: 1) that cross-examination regarding "the Rosenham Study" was irrelevant and misled the jury, and 2) that cross-examination about the fact Petitioner did not plead guilty was irrelevant and misled the jury. The parties disagree about whether this Court may now also review those arguments for plain error. With respect to the relevance of cross-examination regarding "the Rosenham Study," the Missouri Supreme Court held:

The State's cross-examination of Dr. Taylor was relevant and admissible. Dr. Taylor admitted the accuracy of a diagnosis is dependant (sic) upon truthful self-reporting by a patient as recognized by the study. Here, the issue of [Petitioner's] accuracy in his self-reporting to Dr. Taylor was contested. The State sought to challenge Dr. Taylor's diagnosis of [Petitioner] because Dr. Taylor admitted there was some error rate in her profession based upon the need for a patient to self-report truthfully for an accurate diagnosis. Accordingly, the State argued that [Petitioner] attempted to mislead Dr. Taylor in her diagnosis. The circuit court did not plainly err.

*Tisius*, 362 S.W.3d at 408.

With respect to the relevance of cross-examination regarding the fact Petitioner did not plead guilty, the Missouri Supreme Court held:

"When a party inquires into part of an act, occurrence, or transaction they have 'opened the door' to testimony regarding that act, occurrence, or transaction, and the opposing party is entitled to inquire into other parts of it in order to rebut possible inferences that may be drawn from an incomplete version presented by the adversary or to prove the party's own version of events." *State v. Newsom,* 299 S.W.3d 784, 789 (Mo.App. S.D. 2009). Here, [Petitioner] sought testimony from Dr. Taylor demonstrating his remorse and sorrow for murdering two peace officers. The State's cross-examination of Dr. Taylor was an attempt to discredit the veracity of [Petitioner's] feelings as he related them to Dr. Taylor.

Further, had this Court not reversed and remanded the penalty phase of [Petitioner's] trial, this jury would have sat during the guilt and sentencing portions of his trial. Accordingly, the jury would have known [Petitioner] did not plead guilty as it would have determined his guilt or innocence. The circuit court did not plainly err in allowing this cross-examination.

*Id.*

Respondent cites *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015), for the proposition that "discretionary plain error review does not cure a procedural default." Doc. 46, p. 109. Petitioner counters: 1) that *Clark* was wrongly decided; 2) that at least "15 cases" have held that federal review in these circumstances is not barred; 3) that the case on which *Clark* relied, *Hayes v. Lockhart*, 766 F.3d 1247, 1253 (8th Cir. 1985), has been superseded by U.S. Supreme Court decisions; and 4) that *Hayes* was based on Arkansas's plain-error standard and not Missouri's, which is "significantly different." Doc. 55, pp. 127-133.

The Court need not decide this issue, because even if federal habeas review is allowed, Petitioner's claims fail. Petitioner advocates a plain-error review standard be applied by this Court.

48

Doc. 55, p. 132) ("Moreover, the rationale of *Burns* . . . that using a plain error review standard in federal habeas proceedings respects the state's position is especially appropriate in a death penalty case."). In *Burns v. Gammon*, the Eighth Circuit applied plain-error review to a point petitioner had procedurally defaulted by not raising a specific objection at trial, but to which the state courts had given plain-error review. 173 F.3d 1089, 1095 (8th Cir. 1999). Following Petitioner's suggested approach, this Court's inquiry is limited to whether the Missouri Supreme Court's rejection of these claims resulted in a miscarriage of justice. *Id.* at 1096. This Court finds no miscarriage of justice occurred. The Court agrees with the Missouri Supreme Court's findings that both points of cross-examination at issue were logically and legally relevant.

As to the remaining arguments, i.e. that cross-examination regarding "A Child Called It" was based on hearsay and that cross-examination regarding both "A Child Called It" and "the Rosenham Study" lacked foundation, Respondent argues these points have been procedurally defaulted. Petitioner raised the same foundation arguments in front of the Missouri Supreme Court, and the Missouri Supreme Court denied plain error review because Petitioner failed at trial "to object to the State's questions regarding the foundation of either the book or the study[,]" and foundation objections will not be reviewed for the first time on appeal because when such an objection is properly raised, foundation deficiencies can often be remedied. *Tisius*, 362 S.W.3d at 407 (citing *State v. Butler*, 24 S.W.3d 21, 25-26 (Mo. App. W.D. 2000)). Similarly, Petitioner did not object at trial to cross-examination regarding "A Child Called It" on hearsay grounds.

Petitioner does not attempt to argue cause exists to excuse the procedural default nor does Petitioner argue a fundamental miscarriage of justice occurred. Petitioner instead argues:

> The state says that there was a "procedural default" because some of those arguments were not made on direct appeal. But the claim before this Court, which was considered by the Missouri Supreme Court, was that the trial court erred in allowing cross-examination about the book. The state cites no authority, and counsel for [Petitioner] are aware of none, that when a claim is preserved, the habeas arguments must be identical to the arguments made in the state court.

Doc. 55, p. 125. The procedural default occurred because Petitioner failed to make such objections *at trial*. In addition, "a habeas petitioner's claims must rely on the same factual and legal bases relied on in state court" or else they are defaulted. *See Winfield*, 460 F.3d at 1034. The Court finds these points are procedurally defaulted. No cause exists to excuse the procedural default, and no miscarriage of justice occurred.

49

For these reasons, Petitioner's Ground 9 is denied.

     **5.    Ground 10 – [Resentencing] counsel's failure to object to the prosecution's closing arguments urging that (1) the jury had an obligation to sentence [Petitioner] to death to protect the law enforcement community from [Petitioner]; (2) death was appropriate because that was what the victims' families desired; and (3) [Petitioner] did not have the right to ask for mercy violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.**

     On direct appeal from the resentencing proceeding, Petitioner argued that these same three portions of the State's closing argument were impermissible and prejudiced Petitioner. *Tisius*, 362 S.W.3d at 409-11. Because Petitioner's counsel did not object to the State's closing remarks during the resentencing proceeding, the Missouri Supreme Court reviewed for plain error Petitioner's claim that the circuit court failed to intercede *sua sponte* during the State's closing. *Id.* at 409. The Missouri Supreme Court found no plain error occurred.

     In the second initial-review collateral proceeding, Petitioner argued that resentencing counsel's failure to object to each of these three points in the State's closing argument constituted ineffective assistance of counsel under *Strickland*. Doc. 46-29, p. 22. The Boone County Circuit Court denied the claims. Doc. 46-29, p. 37. On appeal to the Missouri Supreme Court, Petitioner abandoned the argument that resentencing counsel was ineffective in failing to object to the State's closing remarks regarding the need to protect the law-enforcement community from Petitioner. *Tisius*, 519 S.W.3d at 428-29. Respondent argues that this point has been procedurally defaulted.

     The Court agrees this point has been procedurally defaulted. Petitioner does not argue that cause and prejudice exist to excuse the procedural default. Rather, Petitioner argues the Court should consider this point "because [Petitioner] included in his direct appeal resulting from his resentencing proceedings a claim asserting that this argument was improper and the Missouri Supreme Court considered the claim on its merits[.]" Doc. 55, p. 141. Petitioner concludes that this Court should consider whether the Missouri Supreme Court's decision denying the claim that the State's closing remarks regarding the need to protect law enforcement were improper on direct appeal was itself "contrary to or an unreasonable application of clearly established Supreme Court law." Doc. 55, p. 142.

50

Even accepting Petitioner's argument that the underlying claim has been preserved for federal review, Petitioner fails to recognize that any review, at most, would be based on plain error as was the Missouri Supreme Court's review on direct appeal due to resentencing counsel's failure to object during the State's closing. Assuming Petitioner is entitled to plain error review, this Court agrees with the Missouri Supreme Court's analysis and finds no plain error occurred. *Tisius*, 362 S.W.3d at 410.

Respondent agrees that Petitioner's other two points have been preserved for federal review. The State's closing remarks regarding the victims' families were:

> And, you know, it's pretty audacious to come in here now, as this defendant is doing, and saying, I didn't have a dad, and, boy, look what happened. Do those Miller kids—do those Miller kids get to kill somebody because their dad, their father figure is gone? If so, [Petitioner], write down the name. Tell me who they get to kill, because I bet your name would be on that piece of paper. . . .

> If the death penalty means anything, if it has any application at all, it can eliminate one thing here. It can stop [Petitioner] from doing this again. And it is an answer to the plea from the families of Leon and Jason and Randolph County that you do justice in this case.

*Tisius*, 519 S.W.3d at 429; Doc. 38, p. 136.

In the last, reasoned decision on this issue, the Missouri Supreme Court held that resentencing counsel was not ineffective by failing to object:

> When read in context, the state's closing argument regarding the Miller children was not an appeal for the jury to impose the death sentence based on emotion but rather a comment as to the credibility of [Petitioner's] defense that he was less responsible for his actions because he lacked a father figure. Any objection from trial counsel, therefore, would not have been meritorious. Likewise, although [Petitioner] frames the state's argument regarding the victim's families as an impassioned plea to the jury's emotions, the prosecutor's statement, when read in context, equated imposition of the death penalty with justice. Because it is not improper for a prosecutor to "seek and request the most severe penalty," *State v. Clayton*, 995 S.W.2d 468, 480 (Mo. banc 1999), any objection would have been nonmeritorious.

*Tisius*, 519 S.W.3d at 429.

The State's closing remarks regarding mercy were:

> Ladies and gentleman, you can—and I told you during voir dire a couple days ago, you can extend mercy for whatever reason to this man. You can do that. But the

51

one thing he does not have the right to do is ask for it. He forfeited that right on June 22nd when he committed these two murders.

*Id.*; Doc. 38, p. 136-37. In the last, reasoned decision on this issue, the Missouri Supreme Court held that resentencing counsel was not ineffective by failing to object:

> When read in context, the state is not arguing the jury cannot, as a matter of law, extend mercy to [Petitioner]. In fact, the state expressly argued that the jury "can do that." Instead, the state is arguing that mercy should not be extended to [Petitioner] because of the murders he committed. "A prosecutor is allowed to argue that the defendant does not deserve mercy under the facts of a particular case." *State v. Rousan*, 961 S.W.2d 831, 851 (Mo. banc 1998). Because the state was allowed to make such arguments, any objection by trial counsel would have been nonmeritorious. Accordingly, trial counsel were not ineffective for failing to object to the state's closing arguments.

*Tisius*, 519 S.W.3d at 430.

Petitioner argues the Missouri Supreme Court's decision denying Petitioner's ineffective assistance claim that resentencing counsel failed to object to the State's closing remarks regarding the victims' families was contrary to Supreme Court law as stated in *Payne v. Tennessee*, 501 U.S. 808, 830 n.2 (1991). Petitioner argues the State's closing remarks "were improper because they contained purported evidence of the victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence for [Petitioner][.]" Doc. 38, p. 136. The Missouri Supreme Court made a reasonable determination in light of the evidence presented that the State's closing remarks did not contain such evidence. Rather, as the Missouri Supreme Court found, the State's closing remarks "equated imposition of the death penalty with justice[,]" which is permissible.

Petitioner argues the State's closing remarks regarding mercy were an "appeal to vengeance[.]" Doc. 38, p. 137. Petitioner concludes, "Trial counsel's failure to object to these improper arguments constituted deficient performance." Doc. 38, p. 137. The Missouri Supreme Court made a reasonable determination in light of the evidence presented that the State's closing remarks did not seek vengeance. The State's closing remarks informed the jury they "could" extend mercy, but it was not warranted in light of the murders Petitioner committed.

This Court finds the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of federal law. The Court further finds the Missouri Supreme Court's

decision was based on a reasonable determination of the facts in light of the evidence presented. Petitioner's Ground 10 is denied.

>        **6. Ground 11 – [Petitioner] was denied his constitutional rights to due process of law and to be free from cruel and unusual punishment due to improper jury instructions at the resentencing hearing.**

Petitioner argues the jury instructions at resentencing were unconstitutional in that instructions 9 and 15 improperly shifted the burden of proof, and instructions 11 and 17 "failed to inform the jury that if they found that mitigating evidence outweighed aggravating evidence, they were required to impose life." Doc. 38, p. 139. Respondent agrees that Petitioner's argument regarding instructions 9 and 15 has been preserved, but Respondent argues Petitioner's argument regarding instructions 11 and 17 has been procedurally defaulted because Petitioner did not object to those instructions at sentencing.

The Missouri Supreme Court reviewed Petitioner's argument regarding instructions 11 and 17 for plain error. *Tisius*, 362 S.W.3d at 411. As they did in connection with Ground 9, the parties again disagree as to whether the Missouri Supreme Court's plain-error review allows this Court to consider the claim. Here, too, the Court need not decide the issue because even if this Court reviews Petitioner's argument for plain error, Petitioner is not entitled to habeas relief. In reviewing Petitioner's argument, the Missouri Supreme Court cited cases in which the same argument had been previously denied. *Id.* at 412. The Missouri Supreme Court declined to overturn those holdings. *Id.* This Court finds no miscarriage of justice occurred.

With respect to Petitioner's argument regarding instructions 9 and 15, the Missouri Supreme Court held that Petitioner's "allegations that the instructions improperly shifted the burden of proof have been rejected by the United States Supreme Court and this Court." *Id.* The Missouri Supreme Court relied on the United States Supreme Court case *Kansas v. Marsh*, which stated:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

548 U.S. 163, 170-71 (2006) (quoting *Walton v. Arizona*, 497 U.S. 639, 650 (1990) (*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002)). The Missouri Supreme Court also cited prior cases in which it had rejected the same argument. *Tisius*, 362 S.W.3d at 412.

Petitioner argues the Missouri Supreme Court's decision misapplied *Kansas v. Marsh*. This Court disagrees and finds that the Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law. The Court further finds the Missouri Supreme Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's Ground 11 is denied.

7. **Ground 12 – Petitioner was denied effective assistance of counsel when [resentencing] counsel failed to offer modified jury instructions that properly set forth the federal constitutional requirements for a death sentence.**

Petitioner argues resentencing counsel were ineffective in failing to object to the submission of jury instructions that were consistent with Missouri's approved instructions. Petitioner argues the instructions did not "properly state[] the constitutional requirements for the death penalty[,]" and were contrary to recommendations of the American Bar Association. Doc. 38, p. 144-45. In the second post-conviction proceeding, Petitioner argued the instructions were improper. Doc. 46-29, p. 23. Petitioner did not argue that resentencing counsel were ineffective in failing to object to the instructions, but rather, Petitioner argued the instructions themselves were improper. Doc. 46-29, p. 23. The Boone County Circuit Court denied the claim because it raised "allegations of trial court error that are outside the scope of a post-conviction motion." Doc. 46-29, p. 41. Even so, the Boone County Circuit Court went on to state:

> Furthermore, this claim is based on the recommendations of the American Bar Association for potential changes to Missouri's laws and court instructions regarding the death penalty. . . . At the present time, none of these recommendations represent either federal constitutional law as interpreted by the United States Supreme Court or the Missouri Supreme Court, Missouri statutory law as adopted by the General Assembly, or the rules of procedure or instructions adopted by the Missouri Supreme Court.

Doc. 46-29, p. 41.

On appeal from the second post-conviction proceeding, Petitioner modified his argument to raise ineffective assistance as he now argues in this federal habeas proceeding. The Missouri Supreme Court held:

54

In his twelfth point, [Petitioner] asserts that trial counsel was ineffective for failing to offer alternative or modified penalty instructions based on the deficiencies identified by the American Bar Association with capital instructions. This is a different claim than that raised in his amended motion for post-conviction relief. In his amended motion, [Petitioner] alleged only that the instructions were constitutionally deficient. He did not allege trial counsel were ineffective for failing to request alternative or modified instructions. Claims not raised in a motion for post-conviction relief are deemed waived and cannot be reviewed on appeal. [*Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014).] "Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Id.* (internal quotation omitted). Accordingly, [Petitioner] waived his claim that trial counsel were ineffective for failing to offer alternative or modified penalty instructions.

*Tisius*, 519 S.W.3d at 431.

Petitioner now argues he can establish cause under *Martinez* to excuse his procedural default because counsel's performance in the second post-conviction proceeding was deficient in that counsel failed to frame the argument as based on ineffective assistance by resentencing counsel so that the argument would have been within the scope of a post-conviction motion. Regardless of whether counsel's performance was deficient, this Court finds the underlying claim of ineffective assistance by resentencing counsel is not substantial, and *Martinez* does not apply. Resentencing counsel's failure to object to jury instructions that were consistent with Missouri's approved instructions and that no court, federal or state, has found to be unconstitutional does not constitute a substantial claim of ineffective assistance. Petitioner's Ground 12 is denied.

> **8. Ground 16 – First trial counsel's failure to adequately investigate and present a diminished capacity or involuntary intoxication defense violated [Petitioner's] constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.**

Petitioner concedes this claim was not raised in the first post-conviction proceeding and has been procedurally defaulted. Petitioner argues, however, that he can establish cause and prejudice under *Martinez* and that the underlying claim is a substantial one such that this Court may review the claim. As to the underlying claim of ineffective assistance by trial counsel, Petitioner argues:

> Given what counsel knew about [Petitioner's] intellectual impairments and medical treatment of psychiatric symptoms with medication, reasonable counsel would have obtained the services of a neuropsychiatrist or similarly qualified medical doctor(s) to investigate whether (1) [Petitioner] suffered from a mental disease or defect and

55

(2) whether—at the time of the offense—such disease or defect diminished [Petitioner's] ability to deliberate and form the requisite mental state for first-degree murder. . . .

Had counsel conducted the appropriate investigation, counsel would have learned that not only does [Petitioner] suffer from a comorbid neurological disorder, frontal striatal temporal syndrome, and severe mental illnesses of post-traumatic stress disorder and dependent personality disorder, but he suffered from them at the time of the crime. Furthermore, at the time of the crime, this mental disease and defect diminished his ability to deliberate such that he did not form the requisite mental state for first-degree murder. . . .

Trial counsel also were ineffective for failing to adequately investigate and present an involuntary intoxication defense under Mo. Rev. Stat. § 562.07. Had counsel done so, they would have learned that [Petitioner] at the time of the offense was in an involuntarily produced intoxicated or drugged condition that deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct. Evidence supporting this defense was available in pretrial discovery where Randolph County jailers Whisenhand and Shill wrote reports concerning the apparent intoxication of [Petitioner] and Ms. Bulington when they visited the jail in the days leading up to the attempted jail-break. Inmates Thomas Antle, Gerardo Arteaga, and Shawn Reese would have told resentencing counsel that [Petitioner] appeared "high" when they saw him that evening. Other witnesses reported similar descriptions.

Doc. 38, pp. 156-59.

This Court finds no cause or prejudice to excuse the procedural default. Counsel's performance in the first post-conviction proceeding was not deficient in not raising this claim. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila*, 1137 S.Ct. at 2067 (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith*, 528 U.S. at 288 (2000)). Counsel in the first post-conviction proceeding thoroughly investigated the issues and filed an amended post-conviction motion that was nearly 300 pages in length and raised numerous claims. Docs. 46-11, 46-12. A four-day evidentiary hearing was held during which more than 20 live witnesses provided testimony. Docs. 46-9, 46-10.

The underlying ineffective assistance of trial counsel claim is not substantial and is not "plainly stronger" than the claims that were raised in the first post-conviction proceeding. Dr. Shirley Taylor, who testified on Petitioner's behalf at trial, evaluated Petitioner and found he had

56

an above-average I.Q. score and showed no signs of brain damage. Dr. Taylor's evaluation gave no indication that a diminished capacity defense would have been possible or even that any further investigation would have been warranted. Petitioner points to zero evidence that he was *involuntarily* intoxicated. In addition, there was significant evidence presented at trial of Petitioner's deliberation, both in the preparation and in the manner in which the murders occurred. The Court finds the underlying ineffective assistance of trial counsel claim lacks any merit, and counsel's performance at the first post-conviction proceeding was not deficient in not raising the claim.

Petitioner argues "this Court must allow [Petitioner] an evidentiary hearing to prove up the claim itself as well as his contention that post-conviction counsel were ineffective." Doc. 55, p. 178. A hearing is not required, however, because Petitioner's claim is not substantial or potentially meritorious. *Thomas*, No. 2020 WL 2601351, at *6. Petitioner's Ground 16 is denied.

9. **Ground 18 – [Petitioner] was denied his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution to present a defense when the trial court sustained an objection excluding a letter from the co-defendant Vance soliciting assistance in breaking Vance out of jail at [Petitioner]'s first trial.**

Petitioner argues the trial court erred in excluding a letter, detailed in Ground 17, allegedly written by Roy Vance to someone named Karl when Petitioner attempted to introduce it during the cross-examination of one of the State's witnesses. Petitioner argues that excluding the letter prejudiced Petitioner because "it was relevant to defend against and rebut the state's case as to: 1) the critical issue of intent/deliberation, i.e., whether there was a plan to kill the jailers or whether the plan was to intimidate them and put them in a cell to effect Vance's escape; and, 2) the relative culpabilities of the codefendants, Vance as the mastermind of the plan directing both Ms. Bulington and [Petitioner]." Doc. 38, p. 168.

Respondent contends Petitioner's claim is procedurally defaulted. Relying on *Clark*, Respondent states that although the Missouri Supreme Court reviewed this claim for plain error on direct appeal, that review does not cure the procedural default. 780 F.3d at 876-77.

On direct appeal, the Missouri Supreme Court found this issue was not properly preserved for two reasons: 1) Petitioner did not make a proper offer of proof sufficiently stating the relevance of the proffered evidence, and 2) Petitioner's reasons asserted on appeal for why the letter was

57

relevant were not presented to the trial court. *Tisius*, 92 S.W.3d at 767. The Missouri Supreme Court reviewed Petitioner's claims for plain error, concluding:

> [Petitioner]'s first argument under this point is that the trial court erred in excluding this evidence because the key part of the letter, that the jury did not hear, was that the plan to break Vance out of jail would be really simple "if done right." That phrase supposedly supported [Petitioner]'s defense that there was no plan to kill the jailers and therefore no deliberation. That ground for admission was never presented to the trial court. Nevertheless, this Court finds no manifest injustice in excluding the letter because regardless of what Vance had in mind for the jail break, the question was whether [Petitioner] deliberated, and that could have occurred independently and well after the letter was written.

> [Petitioner]'s second reason for arguing that the letter should have been admitted was that the letter would have established that Vance and Bulington were the primary planners and that [Petitioner] was merely following their plan. Again, this ground was not presented to the trial court and for the reasons set forth above, this argument must fail.

*Id*. at 768.

Petitioner advocates a plain-error review standard be applied by this Court. Doc. 55, pp. 132, 192-93 ("Moreover, the rationale of *Burns* . . . that using a plain error review standard in federal habeas proceedings respects the state's position is especially appropriate in a death penalty case."). As previously explained, the Eighth Circuit recognized this Court's authority to not consider the merits of such a claim at all, but reasoned that giving the claim limited plain error review, as did the state court, would not encroach on the authority of the state courts. *Burns*, 173 F.3d at 1095. However, the Court need not decide this issue, because even if federal habeas review is allowed, Petitioner's claim fails.

Following Petitioner's suggested approach, this Court's inquiry is limited to whether the Missouri Supreme Court's rejection of these claims resulted in a miscarriage of justice. *Id.* at 1096. This Court finds no miscarriage of justice occurred. The Court agrees with the Missouri Supreme Court's findings that the letter, which was not written by Petitioner, fails to address Petitioner's state of mind and whether deliberation occurred at the time of the murders.

As a result, Ground 18 is denied.

10. **Ground 25 – Counsel's failure to prevent the jury from seeing inflammatory evidence of brain matter of the victims on the floor of the scene of the crime – which the jury otherwise would not have seen and considered – violated [Petitioner]'s constitutional rights to effective assistance of counsel, due process, and freedom from cruel and unusual punishment.**

At trial, after the State presented a portion of the crime scene video to the jury which displayed the victims' body, the State requested to fast-forward the tape to show the jail area, but Petitioner argues that counsel's objection and request to show the entire video resulted in the jury viewing brain matter of the victims on the floor of the scene. Petitioner claims that but for counsel's objection, the jury would not have viewed that portion of the tape. Petitioner argues counsel's failure to prevent the jury from seeing and considering these images constituted deficient performance. Petitioner admits this claim has been procedurally defaulted, but argues that the narrow exception announced in *Martinez* applies allowing this Court to review the claim.

Respondent states Petitioner has failed to allege any facts that suggest post-conviction counsel was ineffective, and only suggests post-conviction counsel was ineffective for failing to raise this claim during state proceedings.

In order to cure the procedural default under *Martinez*, Petitioner must show that counsel in Petitioner's second initial-review collateral proceeding was ineffective under the *Strickland* standards. Here, Petitioner cannot make such a showing. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila*, 1137 S.Ct. at 2067 (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith*, 528 U.S. at 288). In addition, "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Forrest*, 764 F.3d at 858 (internal quotation marks and citation omitted).

Petitioner has not shown that he was prejudiced by counsel's decision not to include this claim in the second initial-review collateral proceeding in that he failed to demonstrate a reasonable probability that the result of the second initial-review collateral proceeding would have been different. Although Petitioner acknowledges a "lack of clarity" as to this claim, Petitioner contends the claim meets the "much lighter 'substantiality' test." Doc. 55, p. 257.

59

Based on the facts before the Court, counsel thoroughly investigated and presented the issues. As noted by Respondent, counsel in the first post-conviction proceeding thoroughly investigated the issues and filed an amended post-conviction motion that was nearly 300 pages in length and raised numerous claims. Docs. 46-11, 46-12. A four-day evidentiary hearing was held during which 23 live witnesses provided testimony and 101 exhibits were introduced. Docs. 46-9, 46-10. As stated above, "[d]eclining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila*, 1137 S.Ct. at 2067. Petitioner has not met his burden to overcome default of this claim. The Court does not find counsel's decision to not include this claim in the second initial-review collateral proceeding to be indicative of deficient performance.

Petitioner has not established "cause" or "actual prejudice" under *Coleman/Martinez*, and the Court finds that failure to consider the claim will not result in a fundamental miscarriage of justice. Additionally, Petitioner argues "this Court must allow [Petitioner] an evidentiary hearing to prove up the claim itself as well as his contention that post-conviction counsel were ineffective." Doc. 55, p. 257. A hearing is not required, however, because Petitioner's claim is not substantial or potentially meritorious. *Thomas*, No. 2020 WL 2601351, at *6. Petitioner's Ground 25 is denied.

### 11. Ground 31 – [Petitioner] was denied his right to effective assistance of counsel by trial counsel's failure to adequately question prospective jurors pertaining to the death penalty.

Petitioner argues that although resentencing counsel questioned the prospective jurors about their ability to consider mitigation, resentencing counsel was ineffective for failing to further explore the jurors' answers concerning their lack of bias in favor of the death penalty. Doc. 38, p. 224. Petitioner claims the circumstances of this case are those in which juror bias against the defense is common, yet pervasive. Specifically, Petitioner points to the fact that the victims "were law enforcement officers and respected members of the community." *Id.* at p. 225. Petitioner claims resentencing counsel did not request or conduct individual, sequestered voir dire to probe adequately the potential biases of the jurors such as biases regarding the appropriate punishment for the killing of a police officer. Petitioner believes the group setting in which the questions were asked potentially made the prospective jurors feel uncomfortable discussing their own personal biases.

60

Respondent contends the claims are procedurally defaulted because Petitioner failed to fairly present this claim during available state-court proceedings. Petitioner acknowledges this claim has been procedurally defaulted, but argues that the narrow exception announced in *Martinez* applies allowing this Court to review the claim.

As explained above, in order to cure the procedural default under *Martinez*, Petitioner must show that post-conviction counsel was ineffective under the *Strickland* standards. *Martinez*, 132 S.Ct. at 1318. To satisfy this standard, "the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Furthermore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." *Martinez*, 566 U.S. at 14.

However, Petitioner fails to allege facts that meet this burden to suggest that post-conviction counsel was ineffective. As stated above, Petitioner states post-conviction counsel failed to raise the argument that resentencing counsel did not request or conduct individual, sequestered voir dire to probe adequately the potential biases of the jurors such as biases regarding the appropriate punishment for the killing of a police officer in state court. Doc. 38. Petitioner contends that "[t]his failure was a direct result of the ineffective assistance of [Petitioner]'s post-conviction counsel, and … [Petitioner] has shown that the underlying ineffective-of-assistance-of-trial counsel claim is potentially meritorious." Doc. 55, p. 288. However, "[g]enerally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance be overcome." *Smith v. Robbins*, 528 U.S. at 288 (citations omitted). Petitioner has failed to overcome this presumption.

Therefore, because Petitioner has failed to establish that he was prejudiced by post-conviction counsel's failure to raise this claim or that the underlying claims of ineffective assistance of trial counsel are "substantial" ones for purposes of *Martinez*, Ground 31 is denied.

61

### C.  Fails to State a Claim for Habeas Relief

 **1.  Ground 7 – [Resentencing] counsel were ineffective for failing to investigate and rebut [Petitioner's] boot shank conviction used by the state as aggravating evidence at his resentencing in violation of [Petitioner's] rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments.**

In June 2006, while awaiting resentencing, a "boot shank," a piece of metal that came from a boot, was found in Petitioner's prison-issued radio. Petitioner was charged with possession of a prohibited object in prison, and entered an Alford plea on January 9, 2009. At resentencing, the State used the boot-shank incident to argue future dangerousness and to impeach Dr. Taylor. At the second initial-review collateral proceeding, counsel argued that resentencing counsel had rendered ineffective assistance in inadequately rebutting the boot-shank conviction. The same argument was raised on appeal to the Missouri Supreme Court. Petitioner states "[t]hat post-conviction claim is the basis of Ground 15 of the petition, and will be discussed in connection with that ground." Doc. 55, p. 108. Petitioner admits that Ground 7 raises the same claim but is based on "new evidence." Doc. 55, p. 108.

Petitioner has maintained since the boot shank was found, that he did not place the boot shank in the radio, but that another prisoner, Charles Hurt, caused it to be placed there. Petitioner now asks the Court to consider Charles Hurt's prison records, which include multiple conduct violations, and a declaration by another inmate, Ricky Sanders, stating that he placed the boot shank in the radio at Charles Hurt's direction. Petitioner argues Dr. Woods could and should have been called to testify that Petitioner's brain damage prevented him from entering a knowing Alford plea and that James Aiken, the prison adjustment expert, could and should have testified about the significance of the prohibited weapon conviction as it relates to dangerousness. On the basis of these pieces of new evidence, Petitioner argues that his resentencing counsel rendered ineffective assistance in not further investigating the boot-shank incident and in not presenting this evidence in rebuttal.

Section 2254(d) applies "to any claim that was adjudicated on the merits in State court proceedings[.]" The Supreme Court has held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Petitioner argues that *Cullen* does not preclude this Court's

62

consideration of Ground 7 because it is "fundamentally altered" by the new evidence. Petitioner relies on one case from the Ninth Circuit, *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), in support of his argument.

*Dickens* is neither controlling nor persuasive. In *Dickens*, the petitioner raised in state habeas proceedings a general claim that his sentencing counsel had been ineffective in failing to investigate petitioner's background and present mitigating evidence. *Id.* at 1317. In federal court, petitioner "changed his claim to include extensive factual allegations suggesting Dickens suffered from FAS and organic brain damage." *Id.* The Ninth Circuit found *Cullen* did not bar consideration of the new evidence because "[w]hile the Arizona courts did previously adjudicate a similar IAC claim, the new allegations and evidence 'fundamentally altered' that claim[.]" *Id.* at 1320. Again, *Dickens* is not controlling and could be read as inconsistent with the Eighth Circuit's recent decision in *Thomas*. 2020 WL 2601351, at *5.

Even if *Dickens* is not inconsistent with *Thomas*, however, it is not persuasive here because the new evidence Petitioner asks the Court to consider does not fundamentally alter the claim as it was presented to the second post-conviction state court. Petitioner describes in Ground 15 the arguments he made to the state courts in his second post-conviction proceedings, "[Petitioner] alleged that counsel should have presented evidence that: inmate Charles Hurt put the boot shank in [Petitioner's] radio; that Hurt had a history of setting up other inmates by snitching on them; that Hurt had brutally stabbed to death his Missouri Department of Corrections cellmate; and, that [Petitioner] was afraid to remove the shank because of Hurt's history of having killed Hurt's cellmate." Doc. 38, p. 151. The "new evidence" Petitioner asks the Court to consider is simply additional evidence of the points he already made to the state courts and upon which his claim that sentencing counsel was ineffective in failing to rebut the boot-shank incident was denied by the state courts.

In this case, *Cullen* applies and precludes review of Petitioner's Ground 7, which is denied.

> **2. Ground 14 – [Petitioner] was denied his constitutional rights to due process of law and confrontation of witnesses when documents concerning his prison contraband conviction were admitted into evidence at his resentencing.**

Petitioner argues the resentencing court erred in allowing the admission of the circuit court complaint from the case that arose from the boot-shank incident. At resentencing, Petitioner

objected to admission of the complaint based on hearsay but did not object based on relevance or the right to confront witnesses. On direct appeal, Petitioner argued all three grounds barred the complaint's admission. *Tisius*, 362 S.W.3d at 404-05. The Missouri Supreme Court found Petitioner had waived the relevance and confrontation objections by not raising them at resentencing, but the Missouri Supreme Court engaged in plain-error review. *Id.* at 405.

In this federal habeas proceeding, Petitioner argues only that the admission of the complaint violated his due process and confrontation rights. On this issue, the Missouri Supreme Court held:

> When the primary purpose of a statement is to establish or prove past events that could be potentially relevant to later criminal prosecution, it may be considered testimonial. *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *see also Zink v. State,* 278 S.W.3d 170, 189–90 (Mo. banc 2009). While the complaint was prepared to instigate litigation, it was not created to preserve evidence. *Cf. State v. Davidson,* 242 S.W.3d 409, 417 (Mo. App. E.D. 2007) (finding the preparation of an autopsy report qualified as a "testimonial statement"), and *State v. March,* 216 S.W.3d 663, 667 (Mo. banc 2007) (finding a laboratory report created for the purpose of prosecution is testimonial in nature). *United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir. 2005). If Petitioner wanted to confront the evidence against him in the complaint, he would have needed to not plead guilty to the charge. Accordingly, there was no manifest injustice by the circuit court's admission of State's Exhibit 53.

Again, the parties dispute whether the Missouri Supreme Court's plain-error review allows this Court to review the otherwise procedurally-defaulted claim, and again, this Court need not decide the issue because even assuming Petitioner is correct that this Court may review for plain error, no manifest injustice occurred as a result of the Missouri Supreme Court's decision. Petitioner concedes that the judgment and sentence from the boot-shank case were properly admitted at resentencing. Doc. 38, p. 149. Without citation to any authority, Petitioner argues the Missouri Supreme Court erred because "[t]he right to confrontation is not waived once and forever; it exists in each proceeding to which the Confrontation Clause applies." Doc. 55, p. 166. The Court finds no manifest injustice occurred by the admission of the complaint into evidence or the Missouri Supreme Court's denial of the claim. Petitioner's Ground 14 is denied.

3. **Ground 15 – [Petitioner] was denied his constitutional right to effective assistance of counsel when [resentencing] counsel failed to investigate and present evidence concerning [Petitioner's] conviction for possession of a prohibited object in prison at his resentencing.**

As Petitioner made clear in connection with Ground 7, Ground 15 raises the portion of this claim that was presented to the state court and has been preserved for federal review. The Missouri Supreme Court summarized Petitioner's argument to the state courts:

> [Petitioner] alleged that further investigation would have led to the discovery that the boot shank was not sharpened and that he possessed the boot shank because another inmate put it in his cell. [Petitioner] also alleged reasonable trial counsel would have explained to the jury what an *Alford* plea is and read the plea hearing transcript so the jury could hear the real reason he possessed the boot shank.

*Tisius*, 519 S.W.3d at 421. The Missouri Supreme Court agreed with the Boone County Circuit Court in finding that some of the evidence Petitioner argued should have been admitted, for example testimony from inmate Timothy O'Hara, was inadmissible hearsay and could not support an ineffective assistance claim. *Id.* at 421-22.

With respect to the other pieces of evidence that Petitioner argued should have been admitted, the Missouri Supreme Court held:

> The remaining rebuttal evidence that [Petitioner] alleges trial counsel should have presented consists of the plea transcript and photographs of the boot shank. [Petitioner] asserts he was prejudiced by trial counsel's failure to rebut the state's evidence with the plea transcript and the boot shank photographs because the jury was left with the impression that he was a risk to correctional staff and other inmates.
>
> While the plea transcript would have presented [Petitioner's] version of why he possessed the boot shank, it also would have revealed information favorable to the state. The factual basis for the plea described the boot shank as "a long, narrow piece of metal that is sharpened at one end" and as a type of weapon that obviously "could be used to endanger the security or safety of another inmate or staff at the correctional center." Although [Petitioner] was charged pursuant to section 217.360.1(4), which requires evidence that the article possessed could endanger the safety or security of the correctional center, that portion of the charge had not been read to the jury. Accordingly, reading the plea transcript to the jury would have emphasized the dangerous nature of the offense to the jury.
>
> Moreover, although the photographs show the boot shank had not been modified or sharpened, they, nevertheless, depict a long piece of rough-looking metal with sharp corners. [Petitioner] can only speculate as to how the jury would have

65

perceived the boot shank photographs. It follows that the plea transcript and the photographs would not have rebutted the impression that [Petitioner] was a risk to correctional staff or other inmates sufficient to create a reasonable probability that the jury would not have imposed the death penalty had such evidence been presented. Accordingly, the motion court did not clearly err in concluding that trial counsel were not ineffective for failing to further investigate or rebut the boot shank evidence.

*Tisius*, 519 S.W.3d at 422.

Petitioner argues the Missouri Supreme Court's decision was contrary to *Williams*, 529 U.S. at 398, which Petitioner states "held that the failure to present potentially harmful evidence can indeed constitute deficient performance if the evidence would have a substantial mitigating effect." Doc. 55, p. 169. The Missouri Supreme Court, however, found the evidence would *not* have had a substantial mitigating effect, and this finding is reasonable in light of the evidence presented. This Court finds resentencing counsel conducted a reasonable investigation and based on that reasonable investigation, resentencing counsel made reasonable decisions as to the scope of any further investigation needed.

The Missouri Supreme Court's decision was neither contrary to nor an unreasonable application of federal law. Further, the Missouri Supreme Court's decision was based on a reasonable determination of the facts in light of the evidence presented. Petitioner's Ground 15 is denied.

### 4. Ground 19 – [Petitioner] was denied due process of law when the trial court at his first trial permitted cameras in the courtroom.

Petitioner argues that he and his lawyers "first learned that cameras would be permitted in the courtroom when they walked in on the first day of trial." Doc. 38, p. 171. Petitioner states the trial court failed to give notice to the parties prior to ruling on the request pursuant to Mo. Sup. Ct. Operating Rule 16.03(b), or to notify defense counsel that an order permitting video recording had be entered. *Id*. Petitioner states that once defense counsel learned of the presence of cameras and reporters, counsel objected that the presence of cameras would put pressure on the jury to convict Petitioner and sentence him to death. *Id*. The objection was overruled by the trial court. *Id*.; Doc. 46-1, pp. 545-546.

Later in the trial, Petitioner states defense counsel reasserted his objection when the prosecutor announced in open court that one of his witnesses did not want to be videotaped. Doc.

66

46-1, pp.762-63. The trial court again overruled the objection. *Id*. Petitioner states that during the defense case, out of the presence of the jury, defense counsel informed the judge "that one of the defense witnesses was uncomfortable with being videotaped, but the judge refused to intervene." *Id*. at p. 1163. Petitioner contends that these incidents are sufficient to establish a due process violation.

Respondent acknowledged that the State and the defense both denied receiving notice of the trial court's grant of permission as authorized under Supreme Court Operating Rule 16, but states Petitioner has failed to show that the media coverage during the trial and sentencing had any adverse effect on his defense. Citing to *Chandler v. Florida*, 449 U.S. 560, 581–82 (1981), the Respondent concluded that Petitioner failed to show either that the media coverage of the trial proceeding impaired the jurors' ability to decide the case on the evidence alone, or adversely impacted one or more of the trial participants.

In the last reasoned decision on this issue, the Missouri Supreme Court affirmed the denial of the claim and held:

> In this case, the two incidents cited by [Petitioner] do not rise to the level of a due process violation. The first incident was brief and does not indicate prolonged or substantial attention to the cameras. The second incident took place entirely at the bench. [Petitioner] has not shown that the presence of the camera compromised the ability of the jury to render a fair verdict. As in an earlier case before this Court, [Petitioner]'s arguments amount to nothing more than "hopeful speculation." [*State v. Simmons*, 944 S.W.2d 165, 179 (Mo. banc 1997).]

*Tisius*, 92 S.W.3d at 769. Regarding the second argument, the Court reasoned as follows:

> Although the rule states that notice "shall" be given to all parties, where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory [sic] and not mandatory. [*Rundquist v. Director of Revenue*, 62 S.W.3d 643, 646 (Mo.App. 2001). *See also Cline v. Carthage Crushed Limestone Co.*, 504 S.W.2d 118 (Mo.1974) (court rule requiring notice should be construed as directory and not mandatory) and *State ex rel. Currier v. Falkenhainer*, 283 Mo. 203, 223 S.W. 100 (1920) (same)]. In this case, although the term "shall" is used to direct the court to give notice of cameras in the courtroom, the rule does not make provisions in the event it is not complied with. In finding no reversible error, this Court has reviewed the [Petitioner]'s arguments, including those made on the record, [[Petitioner] makes additional unpreserved allegations of prejudice: that he was unable to voir dire the jury on whether the cameras would affect them and that he could not determine whether any of the witnesses did not wish to be videotaped.] and determines that [Petitioner] was not prejudiced.

67

*Id*.

In *Chandler*, the Supreme Court refused to promulgate a per se constitutional ban on photographic or broadcast coverage of criminal trials, finding that "[a]n absolute ban on broadcast coverage of trials cannot be justified simply because there is a danger that, in some cases, prejudicial broadcast accounts of pretrial and trial events may impair the ability of jurors to decide the issue of guilt or innocence uninfluenced by extraneous matter." 449 U.S. at 575. Rather, the Court held that a defendant must show that media coverage compromised the ability of the jury to judge him fairly, or in the alternative, that the "broadcast coverage of his particular case had an adverse impact on the trial participants sufficient to constitute a denial of due process." *Id*. at 581. "To demonstrate prejudice in a specific case, a defendant must show something more than juror awareness that the trial is such as to attract the attention of broadcasters." *Id*.

Petitioner has not done so here. Petitioner has not pointed to any evidence that leads the Court to infer that the media coverage had an adverse impact on his trial. Petitioner relies on *Estes v. Texas,* 381 U.S. 532, 535 (1965), but as noted by Respondent, federal courts have recognized that the circumstances in *Estes* were extreme and do not present a good guide for determining the effect of media coverage in other cases. *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011); *In re Tsarnaev*, 780 F.3d 14, 21 (1st Cir. 2015).

As stated by the Missouri Supreme Court, Petitioner "has not shown that the presence of the camera compromised the ability of the jury to render a fair verdict." *Tisius*, 92 S.W.3d at 769. Further, there is no evidence that the media interfered with the trial in any way. The incidents Petitioner points to merely show that the jury was briefly aware of the media coverage, which is insufficient to justify relief under United States Supreme Court precedent. *Chandler,* 449 U.S. 560 at 581 ("a defendant must show something more than juror awareness" of media coverage). As a result, Petitioner is not entitled to relief on this claim. Ground 19 is denied.

### 5. Ground 21 – [Petitioner] was denied due process of law because he was convicted upon legally insufficient evidence of deliberation, an element of first-degree murder under Missouri law.

Petitioner argues the evidence at Petitioner's first trial, which established guilt, fell short with respect to the deliberation element of the first-degree murder offense. Doc. 38, p. 181. Petitioner contends "the evidence posits an impulsive, spontaneous, botched plan to effect the escape of Vance from jail by intimidating the jailers with a gun and using the gun to put them into

68

a cell." *Id*. Petitioner argues the Missouri Supreme Court's analysis and reliance on the fact that Petitioner disposed of the gun and the keys after the murders was "an erroneous view of the facts." Doc. 38, p. 182. Petitioner states the jury heard two versions of the offense, one from co-defendant Ms. Bulington and one from Petitioner, and neither "supports any conclusion other than a brief, totally inexplicable episode of violence that ended with the deaths of two men." *Id*.

Respondent claims the State presented sufficient evidence at trial to show beyond a reasonable doubt that Petitioner deliberated before killing Deputies Acton and Egley.

This Court's review of the sufficiency of the evidence is limited to deciding "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 433 U.S. at 324 n.16, internal citation omitted). But the Due Process inquiry is a narrow one where the "jury in this case was convinced," because "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656; *see United States v. Manning*, 738 F.3d 937, 944–45 (8th Cir. 2014) (rejecting a sufficiency of the evidence challenge to a jury's determination that a defendant had "knowingly" committed an element of the charged offense).

In the last reasoned decision on this issue, the Missouri Supreme Court held:

> The crime of first degree murder consists of three elements: (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter. [*State v. Johns*, 34 S.W.3d 93, 110 (Mo. banc 2000).] Section 565.002(3) defines the intent element of deliberation as "cool reflection for any length of time no matter how brief." The element of deliberation may be proven from the circumstances surrounding the crime. [*State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc 2000).] Absent evidence of deliberation, an intentional killing is second-degree murder. [*State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002).]

> In arguing the evidence was insufficient to convict him of first-degree murder, [Petitioner] cites his confession and Bulington's testimony that the plan was merely to intimidate the jailers with the gun. Such argument was presented at trial and rationally rejected by the jury. Much of the State's argument to the jury on deliberation centered on [Petitioner]'s knowledge of how the jail works (especially late at night), the visits to Vance before the attempt to break him out, the action of

69

test-firing the gun the day of the murders, the proximity of the murder weapon to the officers' heads, the number of shots fired, and the number of victims.

"Evidence of a prolonged struggle, multiple wounds, or repeated blows may ... support an inference of deliberation." [*State v. Ervin*, 979 S.W.2d 149, 159 (Mo. banc 1998).] Here, [Petitioner] shot officer Egley a total of five times, three times in the head at close range, in two separate incidents. The multiple wounds and multiple victims help support the jury's inference of deliberation in this case.

In addition, [Petitioner]'s conduct after the murders can also support a finding of deliberation. [*See State v. Skillicorn*, 944 S.W.2d 877, 887 (Mo. banc 1997); *see also State v. Moore*, 949 S.W.2d 629, 633 (Mo.App. 1997).] After having shot Officer Acton, [Petitioner] took no note of his physical condition and instead turned his gun and immediately shot Officer Egley. After learning that Egley was conscious and did not die from the first round of shots, [Petitioner] fired another round. On his way out of town, [Petitioner] disposed of the murder weapon and the keys. [Petitioner]'s concerns were freeing his friend and escaping. Disposing of evidence and flight can support the inference of deliberation. [State v. Williams, 945 S.W.2d 575, 580 (Mo.App. 1997).]

While the jury was not compelled to find deliberation from the evidence, [*State v. Johns*, 34 S.W.3d 93, 111 (Mo. banc 2000).] the evidence was sufficient to support the jury's verdict that [Petitioner] deliberated before committing two counts of first-degree murder.

*Tisius*, 92 S.W.3d at 764.

As shown by the facts set forth above, a reasonable juror could find that Petitioner deliberated before committing two counts of first-degree murder. In viewing the evidence in accordance with the *Jackson* standard, the evidence shows that Petitioner had knowledge of how the jail works – especially late at night, he had made several visits to Vance before the attempt to break him out, he had test-fired the gun outside Ms. Bulington's car window on the day of the murders, he fired the murder weapon in close proximity to the officers' heads, he fired multiple shots at the victims, and he shot two victims. Further, after Petitioner saw that Deputy Egley was still alive after the first round of shots, Petitioner shot the officer at close range for a total of five times, three of which were in the head at close range.

Accordingly, the Missouri Supreme Court's determination that there was sufficient evidence to convict Petitioner is supported by the record and entitled to deference. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore,

70

it cannot be said that the State court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Ground 21 is denied.

### 6. Ground 29 – The state suppressed favorable exculpatory evidence in violation of [Petitioner]'s right to due process of law.

In Ground 29, Petitioner claims both Ms. Bulington and Petitioner were interviewed in Kansas after their arrest. Doc. 38, p. 220. Petitioner states that although a microcassette of Ms. Bulington's interview, which occurred hours before Petitioner's interrogation, was provided to trial counsel, the State never produced a microcassette of Petitioner's interrogation. *Id*. Petitioner argues that if evidence favorable to Petitioner existed and the evidence was not turned over to defense counsel, Petitioner would have a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner states this *Brady* claim was not reviewed by the Missouri Supreme Court because of ineffective assistance of initial post-conviction counsel and is subject to review pursuant to *Martinez*, 566 U.S. 1 (2012).

The Court granted Petitioner's motion to conduct discovery in an effort to discover whether a recording exists and to more fully develop the claim presented in Ground 29. Doc. 66. Petitioner conducted seven depositions and ordered the production of records. Subsequently, Petitioner submitted a supplemental brief alleging (1) that impeachment evidence was withheld because Detectives Platte and Hall did not retain their notes from Petitioner's interview after incorporating the notes into a final report; and (2) that Detectives Platte and Hall destroyed their notes in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988). Doc. 78. Petitioner argues that "[w]hile Mr. Hall and Mr. Platte testified that everything in their notes was included in the report, that assertion is frankly not credible." *Id*. at p. 7.

In response, Respondent argues the supplemental claims are not properly before the Court. Doc. 79. Specifically, Respondent notes the two supplemental arguments are untimely as they were not presented in Claim 29 of his original habeas petition, which alleged a *Brady* and *Youngblood* violation related to the alleged failure to disclose an audio recording. *Id*. In reply, Petitioner disagrees with Respondent's contention that these claims are not encompassed in his original

71

ground for relief, and explains that the constitutional basis of the amended claims are identical to the "general *Brady/Youngblood* claim" raised in the original petition. Doc. 83.

As cited by both parties, the Supreme Court in *Mayle v. Felix*, held that a *Brady* violation claim related back to the original petition because it involved evidence obtained at the same time by the same police department. 545 U.S. 644, 664 n.7 (2005). Here, the Court agrees with Petitioner's summarization that "his new arguments [] arise out of the same conduct, his interrogation, and the same transaction or occurrence, the methods by which the interrogation report was finalized." Doc. 83, p. 6. Thus, the Court will assume Petitioner's supplemental claims relate back to the original petition and allow the amendment.

Although Respondent acknowledges the supplemental claims may relate back to the original petition, Respondent argues such amendment would still be futile because the proposed claims are procedurally defaulted and facially meritless. Doc. 79, p. 5. Respondent states these supplemental claims are procedurally defaulted because Petitioner "could have discovered these facts by deposing Detectives Platte and Hall before trial." *Id*. at p. 6. Respondent notes that these arguments could have been raised during pre-trial discovery, at trial, on appeal, or during post-conviction proceedings, but Petitioner failed to do so. *Id*. Respondent concludes that Petitioner is unable to show cause for his default under *Martinez*, nor can he show that these facts were not discoverable through due diligence.

In reply, Petitioner asserts Respondent has erred in concluding that Petitioner faces procedural default for the failure to raise his *Brady/Youngblood* violation in state court. Doc. 83, p. 7. Petitioner contends "procedural bars which would wholly prevent the presentation of *Brady* claims cannot withstand constitutional scrutiny." *Id*.

The Court finds that because Petitioner failed to present or argue his claim based on a violation of *Brady* in state court, this claim is procedurally defaulted. *See Coleman*, 501 U.S. at 750. Thus, the Court must decide whether that default is excused by an adequate showing of cause and prejudice. *See id*. at 753. Respondent argues Petitioner failed to allege any facts to satisfy this standard for failing to raise these supplemental claims. Despite Petitioner's assertion that he "can establish cause and prejudice for any procedural default for not discovering earlier the impeachment evidence related to his interrogation and the bad faith in knowingly destroying discoverable evidence," he has failed to do so. Doc. 83, p. 7.

72

Regardless, even if the Court were to find that Petitioner has satisfied the standard to overcome the procedural default, the Court finds the claim to be without merit. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court later held that the obligation to disclose exists even where there been no request by the accused and that the duty encompasses impeachment evidence as well as exculpatory evidence. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985), and *United States v. Agurs*, 427 U.S. 97, 107 (1976)). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82. To show prejudice, the Petitioner must show that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id*. at 289.

Neither the first nor the third of the three components of a *Brady* violation are present here. Petitioner fails to satisfy the first component because he failed to show that the notes at issue contained material that would have been favorable to Petitioner or useful for impeaching any witness. Although Petitioner claims that the State's failure to retain Detectives Platte and Halls' original interview notes may have resulted in the suppression of impeachment evidence, the evidence presented does not support this contention. Doc. 78, p. 4. The deposition testimony of Detectives Platte and Hall stated that they incorporated their notes into formal reports and left no information out. Doc. 72, p. 77; Doc. 75, p. 28. Detective Hall testified that "there wasn't a single thing in the notes that did not go into the report. If I thought it was noteworthy enough to take a pen and write that item down on a piece of paper as a note, it's going into the report." Doc. 75, p. 28. Detective Platte testified that his reports contained "[e]verything" written in his notes. Doc. 72, p. 77. "If it was important enough to write down in a note, it's important enough to go into a report." *Id*. Petitioner has failed to identify exculpatory or impeachment evidence lost during the drafting of the report and not incorporated into the final reports that could have helped him at trial.

As to the third component, Petitioner has failed to demonstrate a reasonable probability that the result of the trial would have been different had the defense had the notes of the officers.

73

As argued by Respondent, Petitioner had the ability to cross-examine Detective Platte about his memory of the interview and the report at trial if he did not believe the report accurately reported his exact wording or sentiment of Petitioner's statements. Thus, Petitioner has failed to demonstrate a viable *Brady* violation occurred.

As to Petitioner's claim that Detectives Platte and Hall destroyed their notes in violation of *Youngblood*, the claim also fails. In *Youngblood*, the Supreme Court explained,

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant.

488 U.S. at 57. In such a situation, the Petitioner must demonstrate (1) that "the evidence … had apparent exculpatory value and comparable exculpatory evidence must not have been reasonably available to the defendant," and (2) bad faith on the part of the government. *United States v. Webster*, 625 F.3d 439, 446 (8th Cir. 2010). Absent these showings, the "failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 57.

Regardless of whether the evidence is exculpatory, Petitioner has failed to show that the notes were destroyed in bad faith. In the deposition testimony, Detective Platte stated that disposing of notes was "common practice" and that "any law enforcement agency" he had worked for followed that practice. Doc. 72, p. 28. Regarding the notes being discoverable, Detective Platte stated he believed that once charges were filed, if notes had been retained, they would be discoverable, but he did not believe it was necessary to retain the notes. *Id.* at p. 28–29. As argued by Respondent, Detective Platte's testimony demonstrates that destroying notes after all the information is finalized in a formal report is a normal practice that he believed to be legal, effective and efficient, rather than an act done in bad faith.

Accordingly, Petitioner has failed to demonstrate that the destruction of Detectives Platte and Hall's notes equates to a *Brady*/*Youngblood* violation. Claim 29 is denied.

74

7. **Ground 30 – [Petitioner] was denied proper proportionality review as required by Missouri law in violation of his constitutional right to due process of law under the Fourteenth Amendment.**

Petitioner argues he was denied proper proportionality review under Mo. Rev. Stat. § 565.035.3(1) and (3). Petitioner states that Missouri's proportionality review statute requires the state court to review all cases in which the death penalty is submitted. Petitioner points out that he received the death penalty when his co-defendant, Vance, did not. Petitioner contends the evidence presented demonstrated that Petitioner, 19 years old at the time of the murders, was "encouraged by 27-year-old Vance, to participate in an ill-fated escape plan that would only benefit Vance." Doc. 38, p. 223. Petitioner argues that although the right to proper proportionality review is based on state law, the right is a liberty interest protected against arbitrary deprivation by the Due Process Clause of the Fourteenth Amendment.

In response, Respondent claims the allegations fail to state a claim for federal habeas relief. Citing to *Middleton v. Roper*, Respondent argues a proportionality analysis is not required by the Eighth Amendment. 498 F.3d 812, 821 (2007). Respondent states the Constitution does not allow this Court to look behind the proportionality review of the Missouri Supreme Court. *Id.*

Generally, federal habeas relief does not lie for a petitioner challenging the state court's application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). When the court's application is arbitrary and causes the deprivation of a state-created liberty interest, however, the petitioner's constitutional right to due process is implicated. *Hicks v. Oklahoma*, 447 U.S. 343, 346–47 (1980). A criminal defendant has a liberty interest in being sentenced under the proper standard under state law and, in Missouri, to have the Missouri Supreme Court conduct a proportionality review of any death sentence as provided under Mo. Rev. Stat. § 565.035. While there is no federal constitutional right to a proportionality review, *Pulley v. Harris*, 465 U.S. 37 (1984), "once in place it must be conducted consistently with the Due Process Clause." *Kilgore v. Bowersox,* 124 F.3d 985, 995 (8th Cir. 1997). What constitutes a proper proportionality review under the Missouri statute, however, is a matter of state law; whether the state court properly interpreted the state statute is not a matter to be determined in a federal habeas action. *Estelle,* 502 U.S. at 67–68.

Here, the Missouri Supreme Court conducted a proportionality review of Petitioner's death sentence under Mo. Rev. Stat. § 565.035.3, which requires that court to determine "(1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary

75

factor; and (2) whether the evidence supports the jury's finding of a statutory aggravating factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant." *See Tisius*, 92 S.W.3d at 765. As to the first factor, the Missouri Supreme Court reviewed the record and concluded "that there is no evidence to suggest that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. Appellant offers no compelling argument to the contrary." *Id*. As to the second factor, the Missouri Supreme Court reasoned as follows:

> [T]he record supports the jury's determination of the statutory aggravating factor that each victim was a peace officer engaged in the performance of his official duties under section 565.032.2(8). In addition, as to Egley, the jury found two additional statutory aggravating factors: that the murder was committed while Appellant was engaged in the murder of Acton under section 565.032.2(2); and that the murder was vile, horrible or inhuman in that it involved depravity of mind under section 565.032.2(7). The evidence supports the jury's findings that both officers were acting as peace officers, and that the murder of Egley, the second officer murdered, was committed while Appellant was engaged in the murder of Acton. The evidence also supports the jury's finding that the murder of Egley was vile, horrible or inhuman in that it involved depravity of mind—Egley was shot several times, at close range, in two separate incidents. During the second incident, Egley was fully conscious and aware that he and his co-worker had been shot.

*Id*.

> Lastly, as to the third factor, the Missouri Supreme Court explained:

> This Court finds too that under the third factor, section 565.035.3, the death sentences in this case are neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. This Court has upheld sentences of death in cases where the defendant committed murder of peace officers. The death sentence has also been found appropriate where the fatal blow is dealt to the victim while the victim is lying injured and helpless, which the facts indicate occurred in this case with Officer Egley.

*Id*. at 765-66.

In this case, the Missouri Supreme Court performed the prescribed review by considering Petitioner's arguments, reviewing the record and considering previous cases in which a death sentence was imposed. *Id*. at 765. The Constitution does not call for the Court to look behind that review. *Middleton,* 498 F.3d at 821 (*citing Walton v. Arizona,* 497 U.S. 639, 656 (1990), overruled on other grounds by *Ring v. Arizona,* 536 U.S. 584, 589 (2002)). Contrary to Petitioner's

76

arguments, the Eighth Amendment does not require proportionality between co-defendants' sentences. *United States v. Johnson,* 495 F.3d 951, 961 (8th Cir. 2007) (*quoting McCleskey v. Kemp,* 481 U.S. 279, 306-07 (1987)). Thus, Ground 30 is denied.

### V.     Certificate of Appealability

A movant can appeal a decision to the Eighth Circuit only if a court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued only if a movant can make a substantial showing of a denial of a constitutional right. *Id.* § 2253(c)(2). To meet this standard, a movant must show reasonable jurists could debate whether the issues should have been resolved in a different manner or the issues deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). For the reasons stated throughout this Order, Petitioner fails to make the requisite showing for issuance of a certificate of appealability.

### VI.    Conclusion

Petitioner fails to demonstrate that the Missouri Supreme Court made an unreasonable determination of fact, or made a decision involving an unreasonable application of federal constitutional law. Further, he cannot overcome the procedural default of many of his claims, nor does he demonstrate cause to establish they are entitled to the *Martinez* equitable exception. Petitioner also fails to show that an evidentiary hearing would assist the Court in the resolution of his claims.

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is denied without a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

Dated: October 30, 2020

77